721 A.2d 43

**Alan HERTZBERG, Appellee,**

v.

**ZONING BOARD OF ADJUSTMENT OF the CITY OF PITTSBURGH, Appellee,**

v.

**MIRYAM'S, Appellant.**

Supreme Court of Pennsylvania.

Argued March 10, 1998.

Decided Dec. 3, 1998.

Michael A. Donadee, James W. Tinnemeyer, Jr. Pittsburgh, for Miryam's, appellant.

George Specter, Pittsburgh, for City of Pittsburgh, appellee.

Glenn R. Bartifay, Pittsburgh, for Alan Hertzberg, appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

In this appeal we review the Commonwealth Court's reversal of an order of the Allegheny County Court of Common Pleas (trial court) upholding the decision of the Zoning Board of Adjustment of the City of Pittsburgh (Board) to grant a variance and special exception to appellant Miryam's. At issue is whether the evidence presented to the Board demonstrated the existence of an unnecessary hardship entitling Miryam's to a dimensional variance and special exception from the applicable zoning ordinances. We find that the Commonwealth Court erred for two reasons. First, the Commonwealth Court applied the standard for a use variance when Miryam's sought only a dimensional variance. Second, the standard employed by the Commonwealth Court is too restrictive and in contrast to this Court's precedents concerning unnecessary hardship, irrespective of whether a use or dimensional variance was sought. Therefore, we reverse.

The facts relevant to this appeal are as follows: Miryam's is a nonprofit social service agency which provides shelter and

services to homeless women.[1] Miryam's sought zoning approval from the zoning officer of the City of Pittsburgh to convert a vacant four-story building into office space, counseling rooms and a reception area on the first floor, a living room, dining room and kitchen on the second floor and ten bedrooms with two beds in each on the top two floors to house twenty women. The building was formerly occupied by a bank and twelve apartment units, but has stood vacant for many years. It is located in a C–4 commercial zoning district which permits lodging houses but not group care facilities or institutional facilities.

Miryam's applied for the zoning permit characterizing its intended use of the building as a "lodging house." [2] The City of Pittsburgh zoning ordinance requires that a lodging house contain 5,000 square feet, plus an additional 300 square feet for each sleeping room in excess of three. Section 989.01 of the ordinance requires a lodging house to provide one parking stall for each of the first 20 sleeping rooms, and one parking stall for every two sleeping rooms in excess of 20 rooms. Thus, under these requirements, Miryam's was required to have 7,100 square feet of space and ten parking stalls in order to be approved as a lodging house.[3] The zoning officer denied

1. Miryam's services are transitional, aimed at helping women obtain their own housing and achieve the skills necessary to live independently. Miryam's has outgrown its current base of operations in Pittsburgh's uptown neighborhood and wishes to move to a larger facility at 1410 Fifth Avenue.

2. The City of Pittsburgh zoning ordinance defines a lodging house as:
A building or portion thereof, containing lodging rooms which accommodate persons who are not members of the keeper's family. Lodging or meals or both are provided for compensation on a weekly or monthly basis. A lodging house shall not include dormitories, fraternity houses, sorority houses or any residence that provides personal services associated with a personal care residence as defined in subsection (p) thereof.

3. Specifically, section 957.04(2)(A) of the City of Pittsburgh zoning ordinance provides:
With sleeping rooms not in excess of 600: 5000 square feet plus 300 square feet for each sleeping room in excess of three, but not in excess of 200, plus 515 square feet for each sleeping room in excess of 200.

the zoning permit on the grounds that the property contains only 3,409 square feet and contains no parking stalls.

Miryam's appealed to the Board for a variance from the area and parking requirements.[4] Appellee, Alan Hertzberg, who owned the adjoining building which housed his law office and several apartment units, opposed the request, contending that Miryam's did not establish the necessity for a variance. The Board granted Miryam's request for a variance and special exception and found that the proposed use was within the definition of a "lodging house." The Board further found that the ten proposed sleeping rooms were necessary to utilize the structure to the most efficient degree, that the building had been vacant for many years, and that the building was uniquely suited for the proposed use. The special exception for parking was granted on the basis that Miryam's clients would not be driving or parking motor vehicles, the clients and some of the employees would either be using public transportation or walking, public parking lots were located nearby and a neighbor had offered to lease parking spaces to the employees.

Hertzberg appealed the decision of the Board to the trial court, which affirmed after denying Hertzberg's motion to allow additional evidence.[5] Hertzberg then appealed to the

4. Miryam's later amended the request for a parking variance to a request for a special exception because the ordinance allows a parking deficiency only by special exception.

5. Hertzberg tried to argue on appeal that the proposed use was not a "lodging house," but instead was equivalent to a "group care facility" or "institutional facility," neither of which was a permitted use under the ordinance. However, the trial court found this issue had been waived because Hertzberg did not argue it before the Board or raise the issue in his notice of appeal. Hertzberg again attempted to raise this waived issue before the Commonwealth Court, asserting that the Board erred in finding that the proposed use was a lodging house because the definitions of "institutional facility" and "group care facility" more closely fit the proposed use. The Commonwealth Court correctly determined that Hertzberg had not preserved the issue and thus, the Commonwealth Court properly refused to address it.

Hertzberg made no attempt to raise this issue in his brief before this Court. The dissent proposes that this Court premise its decision on an issue not before it. This we cannot do. See Pa.R.A.P. 302 (issues not raised in the lower court are waived and cannot be raised for the first

Commonwealth Court. In a memorandum opinion and order, the Commonwealth Court reversed the trial court, finding that Miryam's had failed to prove that, without the variance or special exception, the property could not be used for any one of the sixty-five different uses permitted by the zoning ordinance. Therefore, the Commonwealth Court concluded that Miryam's had failed to demonstrate that it would suffer the "unnecessary hardship" required for the grant of a variance. In addition, the court noted that the Board made no findings of fact that the property could not be used for any permitted purpose, that the property could be arranged for the purpose only at a prohibitive expense, or that the property had either no value or only distress value. The court further reasoned that: "Absent a showing that the property cannot be used in a way and for a purpose consistent with the zoning ordinance, there is not the unnecessary hardship required for the grant of a variance." Commw. Ct. Slip Op. at 8.

This Court granted allocatur limited to the issue of whether the evidence presented to the Board demonstrated the existence of an unnecessary hardship entitling Miryam's to a variance and a special exception.[6] Miryam's asserts that the

time on appeal); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937, 955 n. 19 (1982) (only in direct appeals in capital cases will this Court relax its rules on waiver).

**6.** Since the date of the Commonwealth Court's decision and the date of Miryam's submission of its Petition for Allowance of Appeal to this Court, Hertzberg has sold the adjoining building and relocated his law practice elsewhere. Miryam's now owns the adjoining building. Neither party has raised the issue of Hertzberg's standing. Because the question of standing is not an issue of subject matter jurisdiction, we cannot raise it *sua sponte. Jones Memorial Baptist Church v. Brackeen,* 416 Pa. 599, 602, 207 A.2d 861, 863 (1965); *see also Beers v. Unemployment Compensation Bd. of Review,* 534 Pa. 605, 611 n. 6, 633 A.2d 1158, 1161 n. 6 (1993) (whether a party has standing to maintain an action is not a jurisdictional question). Hertzberg owned the adjoining building at all times leading up to and including the entry of the Commonwealth Court's order and this Court's granting allowance of appeal. Thus, there is no question that he had standing at all relevant times prior to the instant appeal. The core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution of his challenge. *In re T.J.,* 699 A.2d 1311, 1315 (Pa.Super.1997). For purposes of this appeal, Miryam's is the "aggrieved"

Commonwealth Court erred in holding that an applicant seeking a dimensional variance and special exception must demonstrate unnecessary hardship by showing that the building cannot be used for any other permitted purpose. We agree.

■ Where neither the Court of Common Pleas nor the Commonwealth Court conducts a hearing or receives additional evidence that was not before the zoning board, the applicable standard of appellate review is whether the board committed an abuse of discretion or an error of law in granting the variance. *Larsen v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 543 Pa. 415, 419, 672 A.2d 286, 288 (1996). An abuse of discretion will be found only where the zoning board's findings are not supported by substantial evidence. *Id.* 543 Pa. at 421, 672 A.2d at 289. By "substantial evidence" we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983) (citations omitted).

■ The Municipal Planning Code, addressing the standards for granting a variance, requires an applicant to show:

(1) That there are unique physical conditions peculiar to the property and that the unnecessary hardship is due to those conditions;

(2) That because of the physical conditions, there is no possibility that the property can be developed in strict conformity with the zoning ordinance and that a variance is needed to enable reasonable use of the property;

(3) That unnecessary hardship has not been created by the applicant;

party since, as a result of the Commonwealth Court's order, Miryam's cannot develop the building consistent with its proposal. *See Beers*, 534 Pa. at 611, 633 A.2d at 1161 (in order to be aggrieved a party must have a substantial, direct and immediate interest in the subject matter of the litigation). Any party who is aggrieved by an appealable order may appeal therefrom. Pa.R.A.P. 501. Thus, since it was Miryam's, not Hertzberg, who filed this appeal, the instant matter is still justiciable.

(4) That the variance is not detrimental to the public welfare; and

(5) That the variance is the minimum variance that will afford relief and is the least modification of the regulation at issue.

53 P.S. § 10910.2 (Supp.1995). A variance applicant must show that unnecessary hardship will result if a variance is denied and that the proposed use will not be contrary to the public interest. *Allegheny West Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 167, 689 A.2d 225, 227 (1997). The issue in this appeal arises from the application of the first part of the test regarding whether or not unnecessary hardship will result from the denial of the variance. This Court has previously held in the context of use variances that unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance. *Id.* at 168, 689 A.2d at 227.

The issue here involves a dimensional variance and not a use variance—an important distinction ignored by the Commonwealth Court. When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.

In this instance, Miryam's intended use of the property is permitted under the existing zoning regulations. The trial court properly noted that this was a dimensional variance case, and held that Miryam's was not required to prove that the property was unmarketable without the desired variance, "but only that the zoning requirements work an unreasonable hardship in the owner's pursuit of a *permitted* use." Trial Ct.

Slip Op. at 9 (emphasis added). The Commonwealth Court rejected this standard without discussing the difference between a dimensional and use variance and applied the very strict standard which has been developed for use variances— that the property owner must demonstrate unnecessary hardship by showing that the property is valueless without the variance and cannot be used for any other permitted purpose. Commw. Ct. Slip Op. at 8.

We note that although this Court has not formally made a distinction between the standards that should apply when a variance from open area and space requirements is sought instead of a variance from a prohibited use, this Court has discussed the need for a distinction in the requirements to establish unnecessary hardship when a dimensional variance is sought as opposed to a use variance. In *O'Neill v. Zoning Bd. of Adjustment*, 434 Pa. 331, 337, 254 A.2d 12, 16 (1969), this Court stated that "[w]e might be willing to concede that in a given case the quantum of proof required to prove an unnecessary hardship might be less where the petitioner is seeking a variance from space requirements than from use requirements." [7] We find that the instant matter is an appropriate case to make a formal declaration that the quantum of proof required to establish unnecessary hardship is indeed lesser

7. In *O'Neill*, this Court refused to uphold the grant of variances to an applicant who wished to construct a twenty-six story apartment building consisting of 225,809 square feet of floor space and an open area of only 5%. The property was located in a C–3 commercial district which permitted the construction of apartment buildings but limited the allowable floor space to 84,646 square feet and required an open area of 20%. This Court found that *O'Neill* was not the appropriate case to apply a less strict standard for the grant of a dimensional variance because the "apartment building would be more than a mere technical and superficial deviation from the space requirements. The building would contain approximately two and one half times as much floor space as is now permitted under the zoning regulation. In such a situation, petitioner's remedy would appear to be a rezoning and not a variance." *O'Neill*, 434 Pa. at 338, 254 A.2d at 16.

The present case is different from *O'Neill* in that Miryam's is not attempting to add more space than permitted by the zoning ordinance, but rather seeks to make do with the size of the building as is, which is smaller than the zoning requirements. Thus, the case *sub judice* is one in which "a mere technical and superficial deviation from space requirements" is sought.

when a dimensional variance, as opposed to a use variance, is sought. However, we also find that, irrespective of the type of variance sought, the standard employed by the Commonwealth Court was overly strict and contravenes this Court's holdings concerning unnecessary hardship.

In the instant matter, the Commonwealth Court based its decision, at least in part, on the basis that the Board made no finding of fact that the property had either no value or only distress value. This Court rejected the use of the "practically valueless" standard as a requirement for establishing unnecessary hardship in *Allegheny West Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 547 Pa. 163, 167, 689 A.2d 225, 227 (1997). In that case, the owner of a vacant lot in a multiple-family residential zone sought use and dimensional variances because the owner was precluded from developing apartments on the lot due to financial difficulties and was further precluded from selling the property because environmental testing showed that the site was contaminated with petroleum hydrocarbon and benzene. As a result of the potential health risks and prohibitive remediation costs, the owner sought approval from the Pittsburgh Zoning Board to use the property as an open air parking lot. The Board granted both use and dimensional variances and the trial court affirmed.

The Commonwealth Court reversed on appeal, finding that the owner had failed to meet the burden of proving that the property was practically valueless as zoned because the owner had rejected an offer from the party opposing the variance to buy the property for less than half of what the owner had paid for it. Thus, under the Commonwealth Court's reasoning, a variance applicant could not establish unnecessary hardship absent a showing that the property was practically valueless as zoned. This Court reversed the Commonwealth Court, and held that unnecessary hardship *may* be demonstrated by a showing that a property is valueless without a variance. However, this Court made clear that a variance applicant is not *required* to establish that the property is valueless without the variance in order to establish unnecessary hardship.

■ Thus, under *Allegheny West Civic Council, Inc.,* the "valueless" factor is but one way to reach a finding of unnecessary hardship; it is not the only factor nor the conclusive factor in resolving a variance request. Further, in finding that the owner in *Allegheny West Civic Council, Inc.* had met the burden of establishing unnecessary hardship, this Court considered several factors, including the prohibitive costs of developing the property as a result of contamination, the fact that the relatively small size of the lot precluded other permitted uses not involving improvements and the fact that the local property assessment board assigned the property a fair market value of zero. Accordingly, as *Allegheny West Civic Council, Inc.* demonstrates, multiple factors are to be taken into account in order to determine whether unnecessary hardship has been established.

The Commonwealth Court also reasoned in the instant matter that Miryam's failed to establish unnecessary hardship for the desired dimensional variance because the record was devoid of evidence that the property could not be used in a way and for a purpose consistent with the zoning ordinance. This Court rejected similar reasoning in *Halberstadt v. Borough of Nazareth,* 546 Pa. 578, 687 A.2d 371 (1997). In that case, the owner of a massive, one-story building sought use and dimensional variances in order to convert the "fortress-like" structure into four commercial spaces and ten one-bedroom apartments. The building had been vacant for several years and was in disrepair. The building's heavy construction made razing it cost-prohibitive. Renovation was also expensive. Developing the property was further complicated by the fact that the building sat upon land containing hard rock and steep slopes. The Commonwealth Court reversed the grant of the variances, finding that the owner's hardship did not result from unique property conditions because his neighbor's property also contained rock and steep slopes. The court further found that the owner had alternative uses for the property that did not require the requested variances.[8]

8. Specifically, the Commonwealth Court found that the building could have been used as-is for a parking garage or an apartment building.

■ This Court reversed the Commonwealth Court, determining that the court considered the testimony about alternative uses for the property "out of context." *Id.* at 583, 687 A.2d at 373. The full testimony established that while there may have been other uses for the property, the cost of converting the property for those uses was not feasible. In so holding, this Court stated: "Property owners are not required to reconstruct a building to a conforming use regardless of the financial burden." [9] Thus, the standard utilized by the Commonwealth Court in the matter *sub judice,* which would deny a variance to any applicant who failed to demonstrate that the property could not be used for any permitted purpose, is in direct contradiction to this Court's holding in *Halberstadt.*

Further, the Commonwealth Court's reasoning in the case *sub judice* is at odds with its holding in *Wagner v. City of Erie Zoning Hearing Bd.,* 675 A.2d 791 (Pa.Commw.1996), a case similar to the instant matter where the Commonwealth Court employed a relaxed standard of unnecessary hardship for the grant of a dimensional variance. In *Wagner,* the Commonwealth Court affirmed the grant of a dimensional variance and a variance from parking-space requirements where the building owner sought to use the property for the purpose of providing shelter for low income residents and homeless persons. The subject property, which had formerly been used as a motel, stood vacant for many years. The Board heard evidence that the cost of bringing the building into compliance with safety codes plus the expense of renovation would have totaled approximately $750,000. The cost of converting the building to comply with the minimum lot area requirements of the zoning ordinance would have been an additional $864,000. Thus, it would not have been economically feasible for the owner to purchase the building and convert it to the desired use absent the granting of variances. *Id.* at 794. Further, as a result of the deterioration of the building, the type of building, the type of neighborhood and the existing ordinance,

**9.** This Court also found that the fact that the owner's neighbors also had rock and slopes on their properties did not preclude a finding that the owner suffered from a hardship due to the unique conditions of his property.

the building would have been difficult to sell to another purchaser for another use. *Id.*

The Commonwealth Court held that the vacancy of the building and the difficulty with which it was sold evidenced an unnecessary hardship sufficient to warrant the granting of variances. The court stated:

> Although unnecessary hardship usually relates to the physical characteristics of the land, at times, the unnecessary hardship can relate to the building itself. Where the use of property for any purpose is possible only through extensive reconstruction or demolition of the building, it has been held sufficient to establish an unnecessary hardship.

*Id.* at 799.

Recently, the Commonwealth Court clarified the holding of *Wagner* in *Vitti v. Zoning Bd. of Adjustment of the City of Pittsburgh,* 710 A.2d 653 (Pa.Commw.1998). The court stated:

> Our holding in *Wagner* was partly based upon the recognition that, where blighted or dilapidated conditions exist in urban areas, and where the applicant for a variance has undertaken efforts to remediate or renovate those areas for a salutary, productive purpose, *a slight relaxation, or less stringent application of the variance criteria may be the only way the subject property will be put to any beneficial use.*

*Id.* at 658 (emphasis added). In *Vitti,* a non-profit organization devoted to aiding the homeless in the city of Pittsburgh sought to expand its operations by relocating to a larger facility. It purchased a three-story vacant property located in a C–4 commercial zone which had formerly been used as a retail sporting goods store. The Board granted the owners dimensional and parking-space variances from the exact zoning ordinances at issue in the instant matter. In upholding the grant of the variances, the Commonwealth Court noted that the building was dilapidated and had sat dormant as valueless real estate for over seven years. Although the area of the city where the building was located had experienced a recent revitalization, the court noted that the area was "gener-

ally downtrodden," a number of abandoned buildings existed there, and the area experienced socioeconomic difficulties since it had ceased to be a wholesale district of the city. *Id.*

The court agreed with the Board that a variance was the only way for the subject property to be used for virtually any permissible productive use. *Id.* The fact that the cost of the demolition and reconstruction work necessary for strict compliance with the zoning ordinance would have been "astronomical and commercially impracticable" was further evidence of unnecessary hardship. *Id.* The court specifically rejected the argument asserted by the neighbor opposing the variances that there were "literally dozens of permitted uses" to which the property could be put and that a variance should not have been granted in the absence of a showing that the property may not be used for any permitted purpose. *Id.* The court found that the neighbor's assertion that the vacancy of the property had no bearing on the decision process was "simply incorrect". *Id.* Thus, *Wagner* and *Vitti,* beside being contradictory to the Commonwealth Court's holding in the instant matter, are persuasive for the proposition that numerous factors should be considered when evaluating whether an applicant for dimensional variances has established unnecessary hardship.

In the instant matter, the unnecessary hardship standard employed by the Commonwealth Court, which requires an applicant to demonstrate that the building cannot be used for any other permitted purpose, is the same standard that the court specifically rejected in *Vitti.* Additionally, the standard used by the Commonwealth Court in the matter *sub judice* is far more rigid than that found in the Municipal Planning Code, 53 P.S. § 10910.2, *supra,* and in this Court's holdings in *Allegheny West Civic Council, Inc.* and *Halberstadt.* Thus, even if Miryam's had been seeking a use variance, the Commonwealth Court applied the incorrect standard for determining whether unnecessary hardship had been established.

In addition, we now hold that in determining whether unnecessary hardship has been established, courts should

examine whether the variance sought is use or dimensional. To justify the grant of a dimensional variance, courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood. To hold otherwise would prohibit the rehabilitation of neighborhoods by precluding an applicant who wishes to renovate a building in a blighted area from obtaining the necessary variances.

Using these criteria, we turn now to the question of whether Miryam's established unnecessary hardship. The record demonstrates that the building had been vacant for many years prior to Miryam's purchase of it, and that Miryam's intended use as a lodging house is a permitted use under the ordinance. An architect testified before the Board that although the building had been "gutted" and was a "shell," it had a very substantial building structure. Miryam's also established that the total renovation cost, assuming the grant of the required variances, would be between $850,000 and $1,000,000. However, the record is devoid of any information concerning the condition of the neighborhood, the cost of compliance with the zoning restrictions, or the economic hardship Miryam's would incur should the variances be denied.[10] Accordingly, Miryam's should have the opportunity to present further evidence to the Board under the standards enunciated in this opinion. Thus, the order of the Commonwealth Court is reversed and the matter is remanded.

Justice NIGRO files a dissenting opinion in which Justice SAYLOR joins.

Justice SAYLOR files a dissenting opinion.

10. Miryam's asserts in its brief that the building is of little use to any commercial buyer because it would be too expensive to renovate and is located in a lower-scale neighborhood. However, these allegations are not established as facts of record because Miryam's failed to present any evidence to support these claims to the Board.

NIGRO, Justice, dissenting.

The Court granted allowance of appeal limited to the issue of whether the evidence presented to the Zoning Board of Adjustment demonstrated unnecessary hardship entitling Appellant to a variance and a special exception. In finding that the record contained no evidence of unnecessary hardship, the Commonwealth Court correctly employed the same rule of law used by this Court in *Allegheny West Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 689 A.2d 225 (1997), to determine if unnecessary hardship was established. Thus, I dissent from the majority's decision to reverse the Commonwealth Court's order.

As stated by the majority, Appellant applied for a zoning permit to use a building as a lodging house and provide social services to indigent women. The zoning officer denied the permit because the lot did not meet the area requirements of the zoning ordinance. The proposed use of the property, which would lodge 20 clients, required 7,100 square feet under the ordinance. The lot, however, contains only 3,409 square feet, or less than half of the required area. The zoning officer also denied the permit because the proposed use requires ten parking spaces and the property has none.

Appellant appealed to the Zoning Hearing Board and requested a variance from the area requirement and a special exception from the parking requirement. In granting the variance and special exception, the Board made twenty-three findings of fact. It found that the building abuts a parking lot on one side and a three-story structure on the other. The Board found that the building had been used as a bank but has been vacant for many years. It also found that the area variance is necessary to use the structure most efficiently. The remaining findings of fact relate to Appellant's proposed use of the property. The Board concluded that since the building has been vacant for many years, denying the area variance would be an undue hardship, and the lot is uniquely suited for the proposed use.

Appellee, a neighboring property owner, challenged the finding of undue hardship on appeal. Appellee objected to the Board's reliance on the building's vacancy as evidence of unnecessary hardship. The trial court found that in addition to the building's vacancy, the proposed use is consistent with the building's past use as a bank and dwelling units, and consistent with Appellee's use of his property as an office and apartments. The trial court held that the Board reasonably concluded that the property is uniquely suited for the proposed use and that the area variance is reasonably necessary to enable that use.

On appeal to the Commonwealth Court, Appellee again argued that Appellant failed to establish unnecessary hardship justifying the grant of a variance. In agreeing that Appellant failed to make this showing, the Commonwealth Court properly set forth the applicable rule of law as follows:

In order to demonstrate unnecessary hardship, the applicant must show that the physical characteristics of the property are such that either (1) it could not in any case be used for any permitted purpose, or (2) it can be arranged for that purpose only at prohibitive expense or (3) it has either no value or only distress value for any purpose permitted by the ordinance.

Commonwealth Ct. Opinion at 7 (quoting *Hill Distr. Project Area Committee, Inc. v. Zoning Bd. of Adjustment,* 162 Pa.Commw. 323, 328, 638 A.2d 278, 280–81, *appeal denied,* 538 Pa. 629, 646 A.2d 1182 (1994)). This is the same rule of law employed by this Court in *Allegheny West,* 547 Pa. at 167–68, 689 A.2d at 227–28.[1]

In applying this rule of law, the Commonwealth Court correctly stated that the Zoning Hearing Board "made no

---

**1.** While *Allegheny West* is a use variance case, as recognized by the majority, this Court has stated that the same standard applies in area variance cases, although perhaps with a lesser quantum of proof requirement where the variance is sought for a technical or superficial deviation. *See O'Neill v. Zoning Bd. of Adjustment,* 434 Pa. 331, 337–38, 254 A.2d 12, 16 (1969). I disagree with the majority that Appellant's proposed use of a space less than half of the required size is a mere technical or superficial deviation.

finding of fact that [the property] cannot be used for any permitted purpose, it can be arranged for that purpose only at prohibitive expense, or that it has either no value or only distress value." Commonwealth Ct. Opinion at 7–8. The Board's decision, as well as the trial court's decision, reflects no consideration of whether the property could be used in conformity with the zoning code. Rather, the Commonwealth Court accurately reported that the Board only found that the variance is necessary to use the structure most efficiently, that the property has been vacant for many years, and the property is uniquely suited for the proposed use. *Id.*

Notwithstanding the lack of factual findings related to the requirements for unnecessary hardship, the Commonwealth Court reviewed the record. The court found it "completely devoid" of evidence that the property cannot be used in a way consistent with the zoning ordinance. *Id.* at 8. It rejected the Board's factual finding of vacancy supported that the property cannot be used for a permitted purpose. *Id.* The court concluded that without a showing that the property cannot be used in a way consistent with the zoning ordinance, there is not the unnecessary hardship required for a variance. *Id.*

The majority apparently believes that the lower court required Appellant to establish that the property cannot be used for any permitted purpose or that it has no value as zoned, and precluded Appellant from establishing that it could only do so at a prohibitive expense. However, I read the Commonwealth Court's statement that Appellant failed to show that the property cannot be used in a way consistent with the zoning ordinance, as including that Appellant did not establish that it could only do so at a prohibitive expense. To the extent the Commonwealth Court's opinion is unclear, the record in this case includes no evidence related to the requirements for unnecessary hardship. Appellant submitted no evidence as to why it could not use the property in compliance with the zoning ordinance. Rather, all of Appellant's evidence relates to how it wishes to use the property. *See* N.T., 8/31/95 at 7–22. Thus, even if the majority believes the Common-

wealth Court did not properly apply the applicable rule of law, it need only look at the record to see that unnecessary hardship is not established.[2]

The majority then appears to change the unnecessary hardship standard set forth above to allow courts to consider "multiple factors including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." Majority Opinion at 50.[3] The majority states that applicants should be able to renovate buildings in blighted areas. *Id.* at 50. Even if this is true, this is not unnecessary hardship as previously defined by this Court. To the extent the majority's multiple factors can be construed as elements of the traditional unnecessary hardship test, the majority gives Appellant a second bite at the apple to establish unnecessary hardship after it failed to do so the first time before the Board.

In sum, the Commonwealth Court employed the proper rule of law in determining if Appellant established unnecessary hardship. Since the record contains no evidence supporting that Appellant established unnecessary hardship, I would affirm the lower court's decision. Furthermore, I join Mr. Justice Saylor's dissenting opinion as I agree that this case went askew from its inception by proceeding as a dimensional variance case.

Justice SAYLOR joins in the Dissenting Opinion.

**2.** While the majority relies upon *Allegheny West, Halberstadt v. Borough of Nazareth,* 546 Pa. 578, 687 A.2d 371 (1997), *Wagner v. Zoning Hearing Bd.,* 675 A.2d 791 (Pa.Commw.1996)(plurality), and *Vitti v. Zoning Bd. of Adjustment,* 710 A.2d 653 (Pa.Commw.1998), these cases are distinguishable because the applicants therein submitted evidence that the properties could only be used in conformity with the zoning code at a prohibitive cost. There is no such evidence here.

**3.** The Court has rejected the first example—the economic detriment to the applicant if the variance is denied—as providing a basis to grant a variance. *See, e.g., Valley View Civic Ass'n v. Zoning Bd.,* 501 Pa. 550, 556, 462 A.2d 637, 640 (1983)(citing cases).

SAYLOR, Justice, dissenting.

I join Mr. Justice Nigro's dissenting opinion, which concludes that the Commonwealth Court appropriately applied the traditional standard for unnecessary hardship to the circumstances of this case and properly concluded that the record does not support the request for a variance. I write only to state my view that the difficulty in this case stems from the fact that the zoning hearing board erred at the outset in allowing the applicant to proceed as if seeking a dimensional variance when, in actuality, the variance sought was for a use that is not permitted in the zoning district.

Appellant, Miryam's, filed an application with the zoning officer seeking permission to use the premises at issue to provide up to twenty resident women suffering from emotional disabilities with basic needs, counseling and life skills training in an environment which is continuously supervised and includes twenty-four hour crisis intervention services. This, it would seem to me, would constitute use as an "institutional facility," the definition of which includes establishments which provide room and board to individuals who are residents by virtue of receiving supervised specialized services provided by a non-profit social service. See Pittsburgh, Pa., Code of Ordinances §903.02(i). Use of property as an institutional facility, however, is prohibited in a C–4 commercial district. Indeed, the Code permits variances only for "a use permitted in the district where the lot is located." Id. at §909.05. Thus, a variance would not be available under the provisions of the Code to permit Miryam's to operate as an institutional facility.

Perhaps realizing this, Miryam's characterized its intended use of the property as a "lodging house," a permitted use in the district. Such use, however, requires that lodging or meals be provided for compensation on a weekly or monthly basis. Pittsburgh, Pa., Code of Ordinances §903.02(l). There was no evidence presented at hearing that any compensation received by Miryam's from its residents is other than incidental. Indeed, the evidence that was presented established that Miryam's operates as a non-profit organization, obtaining its funding from public agencies, private foundations and contrib-

uting individuals. Additionally, the definition of a lodging house excludes residences that provide personal services associated with a personal care residence. *Id.* Miryam's provision of basic needs, counseling and therapeutic activities in a supervised environment, with the objective of assisting residents to become ready for private sector housing, would appear to encompass personal services of a type that would exclude the use from qualifying as a lodging house.

In other words, under the guise of seeking a variance from lot size restrictions, Miryam's, in reality, sought to employ the property for a use not permitted by the zoning ordinance. Although Hertzberg sought to raise this "use" issue in his appellate brief, he failed to include it among the issues identified in his notice of appeal to the trial court and thus waived the issue as an available ground for relief. Consequently, the case proceeded as if it were a true dimensional variance case.

A disguised use variance case seems to me an inappropriate vehicle in which to attempt to announce new or modified standards pertaining to requests for dimensional variances. A foundational prerequisite to a request for a dimensional variance is a determination that the proposed use for the property is itself permissible, and such permitted use is, in turn, the benchmark from which the entitlement to a dimensional variance must be assessed. Thus, I would not, in a case premised upon waiver, redirect the legal standards for determining the availability of a variance from their traditional focus upon those uses that are permitted by the zoning ordinance. *See generally Allegheny West Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 547 Pa. 163, 167, 689 A.2d 225, 227 (1997)(setting forth the standard for determining unnecessary hardship).

Since the majority's holding declaring a new, multi-factor test for determining the availability of a dimensional variance is essentially detached from the facts of this case, it is difficult to discern the scope of the criteria it has identified, in particular, the economic detriment to the applicant if the variance were denied, and the characteristics of the surrounding neigh-

borhood.[1] The former of these factors, under current law, would be relevant only to the extent that economic detriment is not self-inflicted and results from the practical unavailability of another permitted use. The latter factor, under present law, would be a proper consideration only to the extent that the attributes of the community are reflected in the terms and conditions of the applicable zoning ordinance—neither a zoning board nor a court would be free to substitute its views concerning the local benefits of a proposed use for those of the legislative body vested with the authority to devise and implement a comprehensive plan of development.

While some relaxation of the unnecessary hardship standard may be appropriate in cases involving true dimensional variances, the contours of the standard should be developed in cases in which issues pertaining to dimensional variances are legitimately framed and truly ripe, thus ensuring the factual and legal controversy requisite to a properly informed decision. Judicial caution and restraint are particularly warranted in areas such as zoning, where the General Assembly and local lawmaking bodies have endeavored to develop and implement laws and regulations reflecting policies that will facilitate land use appropriate to particularized local needs and concerns.

Although not unmindful of the societal benefits of Miryam's stated purpose of aiding women with emotional disabilities, given the zoning regulations at issue and the record before us, I believe that such concern would be best addressed to the Pittsburgh City Council, the author of the Pittsburgh Code of Ordinances.

---

1. The second factor identified by the majority, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements, appears to be a restatement of a traditional criterion for determining unnecessary hardship. *See Allegheny West*, 547 Pa. at 167, 689 A.2d at 227 (stating that "[u]nnecessary hardship is established by evidence that the physical features of the property are such that . . . the property can be conformed to a permitted use only at a prohibitive expense").