**Amna SALAHUDDIN, Appellant**

v.

**ZONING HEARING BOARD OF WEST CHESTER and Borough of West Chester.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 7, 2012.

Decided Nov. 14, 2012.

---

Amna Salahuddin, pro se.

Kristin S. Camp, West Chester, for appellee Borough of West Chester.

BEFORE: PELLEGRINI, President Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Amna Salahuddin appeals, *pro se,* from the December 29, 2011, order of the Court of Common Pleas of Chester County (trial court), which denied Salahuddin's appeal and affirmed the decision of the Zoning Hearing Board of West Chester Borough (ZHB). We affirm.

In April 1996, Salahuddin purchased 3,679 square feet of property located at 123 South Walnut Street (Property) in the Borough of West Chester (Borough). The Property is located in the NC–2 Neighborhood Conservation District, Block Class B, pursuant to the Borough of West Chester Zoning Ordinance (Ordinance). The Property is improved with a single-family, semi-detached dwelling. Salahuddin resides on the first floor of that dwelling.

Until 1992, Alonso Duque, the owner at that time, used the first floor of the Property as a single-family dwelling and the second and third floors as a "rooming house." PNC Mortgage Corporation (PNC) acquired the Property in a mortgage foreclosure action in 1992 and, thereafter, the dwelling was no longer used as a "rooming house."

In 1995, Michael Perrone, the Borough's director of building and housing, advised Brian Nelson, a realtor who was marketing the Property as a "multifamily dwelling" on behalf of PNC, that the Property's "multifamily dwelling" use had been "abandoned and the official use of the [P]roperty is a single-family dwelling." (Exhibit B–1.)

On April 1, 1996, Salahuddin purchased the Property and was advised, prior to the purchase, that the dwelling had to be used as a "single-family dwelling" because the "rooming house" use had been abandoned. (N.T., 3/14/11, at 4.) Salahuddin testified that she had "hopes of either converting it or if not allowed, of using it as a single-family [dwelling]." (*Id.* at 39.) Salahuddin used the dwelling as a "single-family dwelling" since the time she purchased it in 1996, although she did not use the second and third floors. (*Id.* at 4, 39.)

■ On January 31, 2011, Salahuddin filed a zoning application with the ZHB requesting a variance to use the dwelling as a "multifamily dwelling." The ZHB held a hearing on March 14, 2011, and, on April 8, 2011, issued a decision denying Salahuddin's request for relief. Salahuddin appealed to the trial court, which denied Salahuddin's appeal and affirmed the decision of the ZHB. Salahuddin now appeals to this court.[1]

Salahuddin contends that she has a nonconforming use and did not intend to abandon the nonconforming use. We disagree.

■ Abandonment of a nonconforming use requires: (1) intent to abandon and (2) actual abandonment. *Latrobe Speedway v. Zoning Hearing Board,* 686 A.2d 888, 890 (Pa.Cmwlth.1996), *aff'd,* 553 Pa. 583, 720 A.2d 127 (1998). Intent to aban-

don will be presumed by a lack of occupancy of the nonconforming use for the prescribed period of time in a municipality with a discontinuation ordinance. *Id.* However, if evidence of intent contrary to abandonment is introduced, then the presumption is rebutted and the burden of persuasion shifts back to the party claiming abandonment. *Id.*

Section 112–96.P of the Ordinance reads as follows:

Abandonment of use. Whenever a nonconforming use of land or of a building or other structure or any portion thereof is abandoned or discontinued for a continuous period of one year or more, such abandonment or discontinuance shall be presumed to constitute an intention to abandon or discontinue such use. Any subsequent use of such building or structure or land shall be in conformity with the provisions of this chapter.

In the present controversy, PNC foreclosed upon the Property in 1992. The Property was not used in any manner from 1992 until April 1996, when Salahuddin purchased the Property. A bank possessing property after foreclosure, "[w]ith its powers of management strictly limited, . . . could neither operate nor abandon the nonconforming use during the [time] it held title." *Appeal of Indianhead, Inc.,* 414 Pa. 46, 52, 198 A.2d 522, 525 (1964). Therefore, the "rooming house" use was not abandoned pursuant to section 112–96.P of the Ordinance while PNC held the Property from 1992 until 1996 when Salahuddin purchased the Property.

Prior to the purchase in 1996, the Borough incorrectly notified Salahuddin that the "rooming house" use had been abandoned and that she was not permitted to

---

1. Where the trial court takes no additional evidence, our scope of review is limited to determining whether the ZHB committed an error of law or abused its discretion. *Valley*

*View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 554, 462 A.2d 637, 639 (1983).

use the Property in that manner. However, Salahuddin is not seeking a "rooming house" use; she is seeking a "multifamily" designation, which is not the same thing as a "rooming house" use.

Section 112–7 of the Ordinance defines a "rooming house" as "[a] dwelling providing lodging with or without meals, but including common cooking and sanitary facilities." Section 112–7 of the Ordinance defines a "dwelling unit" as:

> [o]ne or more rooms in a building, designed for occupancy by one family for living purposes and having its own permanently installed cooking and sanitary facilities, with no enclosed space ... in common with any other dwelling unit.... A dwelling unit may be contained in any of the following structures: ... H. MULTIFAMILY—See 'apartment.'

Section 112–7 of the Ordinance defines an "apartment" as "[a] building on a separate lot containing three or more dwelling units."

■ The Property had never been used as a "multifamily dwelling" and, therefore, Salahuddin did not have a "multifamily dwelling" nonconforming use. Because the "multifamily dwelling" use was not a nonconforming use, Salahuddin was seeking a variance for a new and different use.

■ An applicant requesting a variance must show:

> (1) That there are unique physical conditions peculiar to the property and that the unnecessary hardship is due to those conditions;
> (2) That because of the physical conditions, there is no possibility that the property can be developed in strict conformity with the zoning ordinance and that a variance is needed to enable reasonable use of the property;
> (3) That unnecessary hardship has not been created by the applicant;

> (4) That the variance is not detrimental to the public welfare; and
> (5) That the variance is the minimum variance that will afford relief and is the least modification of the regulation at issue.

*Hertzberg v. Zoning Board of Adjustment,* 554 Pa. 249, 256–57, 721 A.2d 43, 46–47 (1998). An applicant must prove that an unnecessary hardship will result if the variance is not granted and that the proposed use will not be contrary to the public interest. *Id.* at 257, 721 A.2d at 47.

■ Here, Salahuddin failed to present evidence to establish a hardship in that: (1) she failed to show that the Property could not be used for a permitted purpose because the Property had been used as a single-family dwelling since she purchased it in 1996; (2) she failed to show that altering the Property to a conforming use would be prohibitive financially because the Property was already being used for a permitted purpose; and (3) she failed to show that the Property had no value for any purpose permitted by the Ordinance, again, because the Property was already being used as a single-family dwelling, which was a permitted use. "Mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance." *Taliaferro v. Darby Township Zoning Hearing Board,* 873 A.2d 807, 812 (Pa.Cmwlth.2005). The ZHB correctly determined that Salahuddin failed to prove a hardship in denying her request for a variance.

Accordingly, we affirm the trial court.

Judge LEAVITT dissents.

### ORDER

AND NOW, this 14th day of November, 2012, the December 29, 2011, order of the Court of Common Pleas of Chester Coun-

ty, in the above-captioned matter, is affirmed.