IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harold K. Waldman,            :
           Appellant          :
                                     :
           v.                  :     No. 12 C.D. 2021
                                     :     Submitted: June 24, 2022
Borough of Fox Chapel Zoning  :
Hearing Board and Borough of   :
Fox Chapel and James and Christine :
Luketich                     :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT          FILED: February 14, 2023

      Harold K. Waldman (Objector) appeals an order of the Court of Common Pleas of Allegheny County (trial court) that authorized James and Christine Luketich (Landowners) to build a three-car garage on their property. In doing so, the trial court affirmed the decision of the Borough of Fox Chapel Zoning Hearing Board (Zoning Board) that the proposed garage satisfied the setback requirements of The Fox Chapel Zoning Ordinance.[1] On appeal, Objector argues that the trial court erred in its construction and application of the Zoning Ordinance. Discerning no merit to Objector's proffered interpretation of the Zoning Ordinance, we affirm.

---

[1] CODE OF THE BOROUGH OF FOX CHAPEL, Allegheny County, Pennsylvania, §§400-1-400-80 (Zoning Ordinance).

## Background

Landowners own property in the Borough of Fox Chapel at 30 Sweet Water Lane, and Objector owns an adjacent property at 10 Sweet Water Lane. The two properties are divided by a north-south property line. A third parcel owned by Joseph and Karen Kelley abuts the two properties owned by Landowners and Objector. All three properties are in the Borough's A-Residence zoning district, which requires a minimum lot size of three acres.

In 2017, Landowners' house and garage were damaged in a fire. On December 3, 2019, Landowners submitted a building permit application to the Borough of Fox Chapel to reconstruct a three-car garage with a bedroom suite above it. Reproduced Record at 119a (R.R. __). On December 11, 2019, the Borough's zoning officer issued a building permit for the project.

On January 10, 2020, Objector appealed the issuance of the building permit, asserting that the proposed garage violated the applicable setback provisions in the Zoning Ordinance. Objector contended that the lines of an easement on Landowners' property should be used to measure the setbacks. Instead, Landowners used the boundary with Objector's property to measure the side setback for the garage.

At the Zoning Board hearing, a series of documents were admitted into evidence. They included a zoning map, the original subdivision plan, the 1992 revised subdivision plan (Stoecklein plan), the 2002 revised subdivision plan (Waldman plan), Landowners' 2017 garage expansion and renovation plan, and Landowners' current plans for the three-car garage.

Objector testified about the 40-foot-wide access and utility easement on Landowners' property, which extends the length of Landowners' property and is

2

adjacent to the north-south boundary with Objector's property. The easement is paved up to the entrance gate to Landowners' and Objector's properties, and the remainder consists of grass and trees. Objector testified that the easement constitutes a street because it provides access to his property, as well as to the properties owned by Landowners and the Kelleys.

Objector testified that in 2002, he and Landowners reconfigured their lots by trading various parcels. Objector's subdivision plan, known as the Waldman plan, states as follows:

> We, Harold K. Waldman and Diane R. Waldman, owners of a portion of the Waldman plan, hereby adopt this plan as our plan of lots, *and irrevocably dedicate all streets and other property identified for dedication on this plan* to the Borough of Fox Chapel.

Notes of Testimony, 2/19/2020, at 37-38 (N.T. __); R.R. 182a-83a (emphasis added). Objector explained that the Waldman plan, which is recorded, shows a "50-foot setback line" on his side of the boundary line. N.T. 41; R.R. 186a. On cross-examination, Objector acknowledged that the Borough did not accept his dedication of the street referenced in that plan. N.T. 46-47; R.R. 191a-92a.

The Borough's zoning officer, Paul Bell, testified that the easement provided Landowners, Objector, and the Kelleys with access to Sweet Water Lane. Otherwise, their lots would be landlocked. Bell testified that Landowners' proposed garage was farther from Objector's property line than it was before the fire. All the recorded subdivision plans show a 40-foot access and utility easement located entirely on Landowners' property, and the Waldman plan shows the side setback as measured from the boundary between Objector's and Landowners' properties, not from the easement line. Bell testified that were the Borough to treat the access and

3

utility easement as a street, then Landowners' lot size would fall below the required three-acre minimum.

Professor Joseph Mistick testified for Landowners about the Waldman plan.[2]  He explained that setbacks are measured from property lines and not "from access and utility easement[s] or any kind of easement lines."  N.T. 94; R.R. 239a.  Mistick testified that easements neither add to, nor detract from, the buildable area of a recorded lot.  He also testified about relevant case law precedent.

Counsel for the Kelleys stated at the hearing that a survey done when they purchased their property showed that they were allowed to use the "40-foot easement" on Landowners' property, which provides "the only access to their property[.]"  N.T. 114; R.R. 259a.  The Kelley survey was accepted into evidence.

The Zoning Board denied Objector's appeal for the stated reason that the garage setback must be measured from the property boundary line, not from the easement boundary.  It began with Section 400, Attachment 1:6, Part II, of the Zoning Ordinance, which states:

> [n]o structure of any character shall be closer to any street line or property line of any street, road or lane than 75 feet; *not closer to any side lot line than 40 feet* with a combined distance from both side lot lines [of] not less than 100 feet; not closer to any rear lot line or any parkland than 50 feet.

Zoning Board Opinion at 2, Finding of Fact 3; R.R. 45a, 295a (quoting ZONING ORDINANCE, §400, Attachment 1:6 Part II).  The testimonial and documentary evidence demonstrated that the proposed garage would be more than 40 feet from the side lot line.  The Zoning Board also found that there was no public or private

_____

[2] Mistick served as chairman of the Zoning Board of Adjustment for the City of Pittsburgh for seven years.  He teaches land use law and the fundamentals of community planning at Duquesne University School of Law.

4

street, road, or lane located on Landowners' property. It credited Mistick's testimony that easements should not be deducted from the calculation of a lot's required square footage and that setbacks should be measured from the lot line, not the edge of an easement.[3]

Objector appealed to the trial court, which did not take additional evidence. In an opinion and order dated December 7, 2020, the trial court affirmed the Zoning Board's decision in its entirety, concluding that the north-south property line between Landowners' and Objector's respective properties was the proper starting point for measuring the side lot setback. It observed that the recorded "subdivision plans, deeds and other documents do not indicate that the easement was a right-of-way for a road, street or lane." Trial Court Opinion, 12/7/2020, at 3.

Although the Zoning Ordinance does not define the terms "private road," "lane" and "road," the Borough's Subdivision Ordinance[4] does. It defines a private road as "[a] road not dedicated for general public use or public maintenance[,]" and a "road" as "[a] right-of-way, municipally or privately owned, serving or intended to serve as a means of vehicular and pedestrian travel, furnishing actual or potential access from another road to *four or more abutting lots*." SALDO, §380-3 (emphasis added). A lane is "[a] cartway, *which must have a dust-free surface*, providing access from a road to two or three dwellings or their individual driveways." *Id*. (emphasis added). Using these definitions in the SALDO, the trial court concluded that the easement on Landowners' property could not be a "road" because "it is not used for vehicular and pedestrian travel and it does not provide access . . . to four or more abutting lots." Trial Court Opinion, 12/7/2020, at 4. The

_____

[3] The significance of Mistick's testimony is limited because the law is evidence of itself.

[4] The Borough of Fox Chapel Subdivision and Land Development Ordinance (SALDO), §§380-1-380-31.

easement was not a "lane" because it did not have a "dust-free surface" and because the Waldman plan did not show that the easement had a dividing line. Instead, the easement was located entirely on Landowners' property and "filled with trees and improved with landscaping." Trial Court Opinion, 12/7/2020, at 4.

Objector appealed to this Court.[5]

## Appeal

On appeal, Objector raises three issues.[6] First, Objector argues that the trial court erred in holding that the required setback for Landowners' garage was properly measured from the common boundary line. He argues that the boundary of the easement constitutes a "street line" under the Zoning Ordinance. Second, Objector argues that the trial court erred because the Zoning Board improperly adjudicated title questions, which are beyond the Board's jurisdiction. Third, Objector argues that the trial court erred in affirming the Zoning Board's decision permitting reconstruction of a nonconforming structure in violation of the Zoning Ordinance. Objector Brief at 56.

The Zoning Board rejoins that its factual findings regarding the easement were supported by substantial evidence and that it properly construed and applied the Zoning Ordinance.[7] Further, in reaching its conclusion, the Zoning

---

[5] Where, as here, the trial court has taken no additional evidence, our review is limited to determining whether the Zoning Board committed an error of law or a manifest abuse of discretion. *Delchester Developers, L.P. v. Zoning Hearing Board of Township of London Grove*, 161 A.3d 1081, 1085 n.1 (Pa. Cmwlth. 2017). An abuse of discretion will be found only where the Zoning Board's findings are not supported by substantial evidence. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Hertzberg v. Zoning Board of Adjustment*, 721 A.2d 43, 46 (Pa. 1998)).

[6] We have consolidated Objector's first two issues for the sake of clarity.

[7] Landowners and the Borough filed a joint brief to this Court as intervenors in support of the trial court and the Zoning Board decisions. Objector moved to strike the Borough's brief for the stated reason that, after intervening before the trial court, it did not file a brief. As a result, the Borough

6

Board did not adjudicate title matters. Accordingly, the trial court appropriately affirmed its decision.

## Analysis

In his first issue, Objector contends that the side setback for Landowners' garage should not have been measured from the property line but, rather, from the easement line. He argues that the easement is, in actuality, a right-of-way, and the Zoning Board and trial court erred in otherwise holding.

With respect to the applicable setback, the Zoning Ordinance states as follows:

> No structure of any character shall be closer to any street line or property line of any street, road or lane than 75 feet; *not closer to any side lot line than 40 feet* with a combined distance from both side lot lines of not less than 100 feet; not closer to any rear lot line or any parkland than 50 feet.

ZONING ORDINANCE, §400, Attachment 1:6 Part II; R.R. 295a (emphasis added). Objector argues that to satisfy the setback, Landowners' garage must be located 75 feet from the boundary line of the easement because it is a street, road, or lane under the Zoning Ordinance.

Relying on Mistick's testimony, *inter alia*, the Zoning Board concluded that an easement is not a right-of-way. In *Loch v. Zoning Hearing Board of Borough of Emmaus*, 569 A.2d 1035, 1037 (Pa. Cmwlth. 1990), this Court noted "that easement rights do not negate open space" and "do not detract from the land area countable for minimum lot area purposes." Stated otherwise, the easement was irrelevant to the location of Landowners' lot lines, which must enclose a minimum

did not preserve any issue on appeal. However, Objector does not argue that Landowners' brief should be stricken. Because it is a joint brief, Objector's application to strike is denied.

7

of three acres.  Likewise, the easement was irrelevant to the measurement of setbacks, which are determined solely on the basis of lot boundaries.

Objector argues that the "easement" over which he has a right-of-way to access his property is a street, road, or lane.  The Zoning Board responds that an easement implies a specific and limited use of land by the holder of the easement rights.  By contrast, a right-of-way benefits the public at large and is created by condemnation by the Commonwealth, a municipality, or a public utility.

The Zoning Ordinance defines a "street line or public highway line" as follows:

> *The dividing line between a lot and a public street*, road or lane dedicated to the public or officially plotted by the Borough, *or between a lot and a private street, road or lane, over which the owners* or tenants of two or more lots held in single and separate ownership *have the right-of-way. The terms street, road and lane shall include the cartway, sidewalk, gutter and right-of-way area* of the street, road or lane.

ZONING ORDINANCE, §400-5; R.R. 97a-98a (emphasis added).  The SALDO defines a "cartway" as "[t]he portion of a road or land intended for vehicular use" and states:

> In determining the width of a cartway, the edge of the cartway is considered to be the gutter line or the inside of the curb, whichever is more limiting; where a curb is not present, the edge of the cartway is considered to be the edge of the area paved for vehicular use.

SALDO, §380-3; R.R. 59a.  In addition, a cartway must provide access from a road to two or three dwellings.

Objector asserts that the boundary of the easement, which is a "right-of-way," constitutes a "street line."  Objector argues:

> While the entirety of the [easement] is not now opened for travel, it will be as it is the only means of access to the public right-of-way the Kelley property has.  The purpose in establishing

8

setbacks is not just for what is built in the present, but to protect, preserve and facilitate proper development in the future (as the Borough has determined) and to provide persons investing . . . money in their homes [with] some reasonable expectation upon which they can rely to protect their investments and their experience of living in their homes, using the rights-of-way and their surrounding property.

Objector Brief at 40. There are several problems with this argument.

First, the Waldman plan does not state that the easement is intended to be a road, street, or lane. Further, were the 40-foot-wide easement to be removed from Landowners' lot, it would no longer meet the three-acre minimum for the A-Residence zoning district.[8] If that were the case, the Waldman Plan could not have been accepted by the Borough of Fox Chapel. Further, the zoning officer testified that for a subdivision plan to show a road, the plan would have to show curves and radiuses, and none of these are shown on the Waldman plan. N.T. 59-60; R.R. 204a-05a.

Second, it is not disputed that the easement is "just natural grass" and is paved only "up to [the] mutual entrance gates on each side" of Objector's and Landowners' properties. N.T. 47-48; R.R. 192a-93a. "There are sizeable trees on the easement which provides access to an undeveloped lot to the rear of the properties." Trial Court Opinion, 12/7/2020, at 2. These facts remove the easement from the definitions of a "right-of-way" or "lane." See SALDO, §380-3.

Nevertheless, Objector argues that the paving makes the easement a lane because it has a "dust-free surface, providing access from a road to two or three dwellings or their individual driveways." Objector Brief at 44 (quoting SALDO,

---

[8] The SALDO provides that in "determining the area of a lot, no part of the right-of-way of a road or lane, whether public or private, may be included." SALDO, §380-3. The easement exists exclusively on Landowners' property and is included in the three-acre minimum necessary for inclusion in the A-Residence zoning district.

§380-3 (definition of "lane")). Further, Objector argues that he has a right-of-way, *i.e.*, "the right to access the utility easement for maintenance, repair and replacement" and that his property "would be landlocked under Mistick's interpretation." Objector Brief at 45. Indeed, the zoning officer "admitted that the '[e]xtension' of Sweet Water Lane was a private road, which then segues into a private lane" that connects to the driveways of Landowners and Objector. Objector Brief at 47. Thus, the so-called "easement" meets the definition of "private road" or "lane" in the SALDO, and the trial court erred in otherwise holding. We reject Objector's argument.

The Waldman plan places the entirety of the easement on Landowners' property. That plan states, expressly, that it is an "access easement" and "utility easement." R.R. 297a. Under the SALDO, the easement cannot be a "road" because it serves only three lots. SALDO, §380-3. It cannot be a "lane" because it does not have a dust free surface for its entire length that is readily accessible and passable by emergency vehicles. *Id*. The SALDO states, in relevant part, as follows:

> [R]oads and lanes, whether public or private, shall be constructed and maintained with an all-weather, dust-free surface and shall at all times be maintained so as to be readily accessible and passable by emergency vehicles.

SALDO, §380-19(A). The easement may one day provide access to the yet to be developed Kelley lot. However, it will still be an easement, not a road, because it will serve three properties. It will not be a lane unless it is entirely paved, as opposed to having a gravel or dirt surface. The surface of the easement is a matter for those that hold the easement interest.

The Waldman plan identifies the area in dispute as an access and utility easement, and the area designated an easement does not meet the definition of a road

10

or lane under the SALDO. All of these factors, taken together, support the trial court's determination that the boundaries of the easement are not a street line and that the setback was properly calculated by the Borough's zoning officer.

In his second issue, Objector argues that the trial court erred in affirming the Zoning Board because it adjudicated real estate title matters in a land use appeal. Objector argues that zoning hearing boards "do not have jurisdiction over issues of title, determination of real property interests, private contracts or agreements affecting zoning, such as building or use restrictions created by private contracts or other recorded instruments." Objector Brief at 48.

The Zoning Board responds that this issue was waived because it was not raised before the Zoning Board and, in any case, it mischaracterizes the Zoning Board's decision. We agree.

Objector notes that he filed a separate declaratory judgment action in the trial court on August 18, 2020, followed by a motion for clarification, which is still pending before the trial court, regarding these "title matters." He suggests that this Court take judicial notice of the same. The Zoning Board counters that Objector did not raise this issue until he filed a post-judgment motion and, thus, it is waived.

A party must raise an issue at the earliest possible opportunity in order to preserve it for appeal. *See Dehus v. Unemployment Compensation Board of Review*, 545 A.2d 434, 436 (Pa. Cmwlth. 1988). Subject matter jurisdiction can be raised for the first time on appeal. However, we reject Objector's challenge to the Zoning Board's jurisdiction on grounds that it adjudicated the matter of real estate title. As it must, the Zoning Board construed and applied the Zoning Ordinance provisions on terms such as "street line."

11

In his final issue, Objector argues that the trial court erred because the building permit will allow Landowners to rebuild a nonconforming garage in violation of the 50-foot setback from a street line in effect when it was built. The Zoning Ordinance prohibits the reconstruction of a nonconforming structure that has been more than 50% destroyed.[9] Objector argues that the prior garage was a nonconforming structure and was 100% destroyed.

The Zoning Board rejoins that Objector's claims that the previous garage was nonconforming when built or that it was completely destroyed lack any support in the record. Section 400-17(B) of the Zoning Ordinance is simply inapposite.

We agree. Objector's evidence did not prove that the previous garage was nonconforming or that it was completely demolished in the fire. Accordingly, we reject this claim.

---

[9] The Zoning Ordinance states, in pertinent part, as follows:

> Where at the time of passage of the Fox Chapel Zoning Ordinance of 1935 a lawful structure existed which could not be built under the terms of said Zoning Ordinance of 1935 or any amendment thereto, including this Zoning Ordinance of 1971, by reason of restrictions on area, lot coverage, height, yards, its location on the lot, or other requirements concerning the structure, such structure may be continued so long as it remains otherwise lawful, subject to the following provisions:
>
> * * * *
>
> B. Should such nonconforming structure or nonconforming portion of a structure be destroyed by any means to an extent of more than 50% of its replacement value at time of destruction, it shall not be reconstructed except in conformity with the provisions of this Part 1.

ZONING ORDINANCE, §400-17(B).

12

**Conclusion**

For the foregoing reasons, we affirm the order of the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Wojcik did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harold K. Waldman,  :
                    Appellant  :
                                             :
            v.  :        No. 12 C.D. 2021
                                             :
Borough of Fox Chapel Zoning  :
Hearing Board and Borough of  :
Fox Chapel and James and Christine  :
Luketich  :

# **O R D E R**

AND NOW, this 14th day of February, 2023, the order of the Court of Common Pleas of Allegheny County, dated December 7, 2020, is AFFIRMED.

Harold K. Waldman's Application to Strike Intervenor, Borough of Fox Chapel's Brief and Preclude from Oral Argument is DENIED.

_____
MARY HANNAH LEAVITT, President Judge Emerita