William and Billie Jo Lake,    :
            Appellants    :
                         :
        v.              :
                         :
Warrington Township Zoning    :
Hearing Board    :
                         :
        v.              :
                         :
Warrington Township and    :   No. 896 C.D. 2017
Pennex Aluminum Company LLC    :   Submitted: October 20, 2017

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                   FILED: January 11, 2018

       William and Billie Jo Lake (collectively, the Lakes) appeal from the York County Common Pleas Court's (trial court) June 8, 2017 order affirming the Warrington Township Zoning Hearing Board's (ZHB) decision granting Pennex Aluminum Company LLC's (Pennex) special exception/variance application (Application) for an access drive to its property located at 110 Community Street, in Warrington Township (Township), York County, Pennsylvania (Property). There are two issues before this Court: (1) whether the ZHB erred by applying dimensional rather than use variance criteria; and (2) whether the ZHB erred by concluding that Pennex met the criteria for obtaining a variance.[1] Upon review, we affirm.

---

[1] The Lakes' Statement of Questions Involved includes four issues: (1) whether the ZHB erred by applying dimensional rather than use variance criteria; (2) whether the ZHB erred by concluding

Pennex is an aluminum extrusion manufacturing and smelting company whose headquarters have been located at 50 Community Street, Wellsville Borough, Pennsylvania (Headquarters) for more than 30 years. Due to the Headquarters' space constraints, Pennex was faced with having to expand or move out of the Borough. The Property adjoins the Headquarters, and consists of approximately 2.03 acres located in the Township's Village Commercial (VC) Zone,[2] upon which sits a vacant, single-family dwelling.[3] The Property has approximately 150 feet of frontage along Community Street. On November 9, 2010, Pennex entered into a sales agreement to purchase the Property, which was then in a residential zoning district,[4] with the intention of demolishing the dwelling, consolidating its Headquarters and the Property

---

that Pennex's hardship was not self-created; (3) whether the ZHB erred by concluding that the only hardship necessary was the Property's unique physical characteristic; and, (4) whether the ZHB abused its power or arbitrarily determined that the variance would not detrimentally affect the area's safety or substantially and/or permanently impair the Lakes' use and/or development of their property. *See* Lakes' Br. at 5. Because the second, third and fourth issues relate to whether the ZHB erred by concluding that Pennex met the criteria for obtaining a variance, we have combined those issues accordingly.

[2] Section 307(a) of the Zoning Ordinance states:

> This Zone is intended to provide for the Township's commercial and industrial land use needs. Given the rural character of the Township, this Zone only provides for (as permitted uses) limited commercial and/or industrial uses that relate to the local retail, service and employment needs of the Township. . . . Areas within this Zone have been deliberately located close to the Township's planned residential growth areas to minimize vehicular traffic congestion and conserve energy. This strategy also helps to preserve the outlying pastoral character of the Township.

Zoning Ordinance § 307(a).

[3] Despite the Property's and Headquarters' adjoining lots, the Property is located in the Township, while the Headquarters is located in Wellsville Borough.

[4] In March 2012, the Township's Board of Supervisors amended the Township's zoning map, thereby changing the Property's zoning from residential to VC.

into a single lot (Combined Property) with an access drive, and using the resulting lot for tractor-trailer parking and storage.[5]

On September 8, 2016, Pennex filed an application with the ZHB, wherein it sought a two-year extension of the six-month timeframe set forth in Section 603(a) of the Township's Zoning Ordinance to obtain a zoning permit, secure a use certificate or file a subdivision and land development (SALDO) plan, and requested dimensional variances from Sections 410(c)(3) and 410(c)(4) of the Zoning Ordinance for the proposed access drive to be aligned with Carroll Street at an existing intersection. *See* Reproduced Record (R.R.) at 12a-21a. Because the proposed access drive's alignment with the Carroll Street intersection had to be located on the Property's common lot line with the adjoining Wellsville Fire Company property (Fire Company Property), and the edge of the proposed access drive would encroach on a small portion of the Fire Company's parking lot, Pennex and the Fire Company recorded a Deed of Easements. *See* R.R. at 20a, 35a-43a.

At the Township Planning Commission's September 1, 2016 meeting, Billie Jo Lake (Ms. Lake) questioned why Pennex's proposed access drive is not an industrial use, and expressed her concerns about traffic signage, trailer storage and noise. The Planning Commission unanimously agreed to recommend that the ZHB approve Pennex's September 8, 2016 application.

On October 19, 2016, Pennex filed the Application, which amended its September 8, 2016 application to include a special exception under Section 410(b) of the Zoning Ordinance in case the Township considers the Headquarters' existing Community Street access an access drive to the Property and, thus, the proposed access

---

[5] The proposed tractor-trailer parking and storage lot is a permitted accessory use to Pennex's operations at its Headquarters. *See* Reproduced Record at 72a.

drive would be a second access drive along the Property's Community Street frontage.[6] *See* R.R. at 30a.

The ZHB held a hearing on November 15, 2016, at which professional engineer Chad Peters (Peters) testified in support of the Application, and the Lakes opposed the Application. *See* R.R. at 59a-118a. On December 8, 2016, the ZHB granted the Application, thereby approving the special exception "for the construction of more than one [] access drive per lot or parcel conditioned on the approval of a reverse subdivision plan[;]" authorizing the dimensional variances to align the proposed access drive with the Carroll Street intersection; and extending the permitting and SALDO time period from six months to one year. ZHB Dec. at 8; R.R. at 10a. On December 29, 2016, the Lakes appealed to the trial court.[7] Without taking additional evidence, the trial court affirmed the ZHB's decision on June 8, 2017. The Lakes appealed to this Court.[8]

Initially, Section 203 of the Zoning Ordinance defines "access drive" as "[a] private drive, other than a driveway to a single residence, which provides for vehicular access between a street and a parking area, loading area, drive-in service

---

[6] Section 410(b) of the Zoning Ordinance provides: "The number of access drives may not exceed one (1) per lot or parcel on any one (1) street frontage. The [ZHB] may grant permission by special exception for additional access drives where required to meet exceptional circumstances and where frontage of unusual length exists." Zoning Ordinance § 410(b).

[7] Pennex and the Township intervened, and the Township adopted Pennex's brief.

[8] When no additional evidence is taken following the determination of a [ZHB], this Court's scope of review is limited to determining whether the [ZHB] committed an error of law or a manifest abuse of discretion in rendering its decision. An abuse of discretion occurs when the findings are not supported by substantial evidence in the record. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*JoJo Oil Co., Inc. v. Dingman Twp. Zoning Hearing Bd.*, 77 A.3d 679, 685 n.6 (Pa. Cmwlth. 2013).

Because the Lakes do not challenge the ZHB's approval of Pennex's special exception or deadline extension, their appeal is limited solely to the ZHB's dimensional variance approval.

On September 25, 2017, the Township joined in Pennex's appeal brief.

4

window or other facility within a land development." Zoning Ordinance § 203. Section 410(c) of the Zoning Ordinance specifies that "[a]ccess drives shall have the following characteristics":

> 1. The vertical and horizontal alignments of access drives shall conform to the specifications for minor streets as stated in Sections 505(j) and 505(k) respectively of the Township [SALDO].
>
> 2. The intersection of an access drive with a street or with another access drive shall conform to the specifications for collector streets as set forth in Sections 507(a), (b), (c), (f) and (g) of the Township [SALDO].
>
> 3. At its intersection with a street, **no part of any access drive shall be nearer than fifty (50) feet to the intersection of any two (2) street right-of-way lines**.
>
> 4. **An access drive shall not cross a street right-of-way line** within five (5) feet of a fire hydrant; within twenty-five (25) feet of another access drive on the same property; or **within three (3) feet of a property line**. However, in cases where access from an arterial or collector street may be necessary for several adjoining lots, [the] Township may require that such lots be served by one (1) or more combined access drives in order to limit possible traffic hazards on such streets.
>
> 5. The slope of an access drive, other than as regulated by Subsection 2. above, shall not exceed twelve and one-half percent (12.5%).
>
> 6. All access drives in curbed areas shall have a recessed curb at the access drive entrance.

Zoning Ordinance § 410(c) (emphasis added); R.R. at 205a. Thus, Section 410(c) of the Zoning Ordinance prohibits access drives from the Headquarters and the Property from being located within 50 feet of the intersection of Carroll and Community Streets and within three feet of the property lines.

5

"A property owner seeking a variance must demonstrate both unnecessary hardship if the variance is denied and that the proposed variance is not contrary to the public interest." *Goldstein v. Zoning Hearing Bd. of Twp. of Lower Merion*, 19 A.3d 565, 569 (Pa. Cmwlth. 2011). Section 603(c) of the Zoning Ordinance provides that, in order to obtain a variance from Section 410(c) of the Zoning Ordinance, Pennex must establish the following:

> Where there is unnecessary hardship, the [ZHB] may grant a variance in the application of the provisions of this [Zoning] Ordinance provided that the following findings are made where relevant in a given case:
>
> 1. There are unique physical circumstances or conditions, including:
>
>> a) irregularity, narrowness, or shallowness of lot size or shape
>>
>> b) exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the Zoning Ordinance in the neighborhood or zone in which the property is located.
>
> 2. Because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
>
> 3. The unnecessary hardship has not been created by the appellant.
>
> 4. The variance, if authorized, will not alter the essential character of the neighborhood or zone in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

6

5. The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Zoning Ordinance § 603(c); R.R. at 231a. "It is the function of the [ZHB] to determine whether the evidence satisfies the criteria for granting a variance." *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014).

The Lakes first argue that the ZHB erred by applying dimensional rather than use variance criteria. This Court notes that Pennex expressly applied for dimensional variances from Sections 410(c) and (d) of the Zoning Ordinance. *See* R.R. at 30a-31a, 74a. In *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43 (Pa. 1998), the Pennsylvania Supreme Court declared:

> When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.

*Id.* at 47; *see also Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1 (Pa. Cmwlth. 2015). Accordingly,

> in *Hertzberg,* our Supreme Court set forth a more relaxed standard for establishing unnecessary hardship for a dimensional variance, as opposed to a use variance.
>
> Under *Hertzberg,* **courts may consider multiple factors** in determining whether an applicant established unnecessary hardship for a dimensional variance**. These factors include**: '*the economic detriment to the applicant if the variance was denied,* the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and *the characteristics of the surrounding neighborhood.*' *Id.* at 50 (emphasis added).

7

*Tidd*, 118 A.3d at 8 (emphasis added). Notwithstanding that the Application was for dimensional variances, "[t]he same criteria apply to use and dimensional variances." *Id.* at 8. Accordingly, "[a]n applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship." *Id.* (citation omitted).

Here, Pennex sought to place the proposed access drive closer than 50 feet from the existing intersection, and within three feet of the Fire Company Property line in order to align the access drive with the existing intersection, for the safety of its employees and the traveling public. Section 102(h) of the Zoning Ordinance specifies, *inter alia*, that "[t]he purpose of the [Zoning Ordinance] is to promote and protect the harmonious development of the Township by facilitating . . . [t]he greater health, safety and welfare of the citizens of the Township." Zoning Ordinance § 102(h). Section 410 of the Zoning Code also expressly permits access drives. Because access drives are not only consistent with but anticipated by the Zoning Ordinance, Pennex's variance requests represented a "reasonable adjustment" to the Zoning Ordinance and are not "wholly outside" it. *Hertzberg*, 721 A.2d at 47. Accordingly, the ZHB did not err by applying dimensional rather than use variance criteria.

The Lakes also contend that the ZHB erred by concluding that Pennex met the Zoning Ordinance's variance criteria. The Lakes specifically assert that the ZHB erred by concluding that the only hardship required was the Property's unique physical characteristic, that Pennex did not create it, and that the ZHB abused its power or arbitrarily determined that the variances would not detrimentally affect the area's safety or impair the Lakes' use or development of their property.

At the November 15, 2016 ZHB hearing, Pennex's counsel explained that the current access drive for the Headquarters is located on Community Street just southwest of Carroll Street within the Borough. *See* R.R. at 21a, 66a-67a. He represented that, in order to strictly comply with Section 410(c) of the Zoning

8

Ordinance, the Property's access drive would have to be located approximately 50 feet northeast of Carroll Street. *See* R.R. at 66a.

Peters testified that tractor-trailers currently accessing the Headquarters approach on Carroll Street, turn left onto Community Street, and then make an immediate right-hand turn into the Headquarters' lot. He reported that the "very tight turn[s]" make the current Community Street-to-access drive transitions unsafe. R.R. at 74a. Peters explained that providing for the 50-foot offset the Zoning Ordinance required for the Property's access drive could result in trucks encroaching onto neighboring properties on the south side of Community Street in order to negotiate the turn. Specifically:

> It would create a situation where they would have to make an extremely tight turn heading northwest onto Community and then make an equally tight turn, a left turn onto the [Property] into the actual lot. With a semi-trailer on a road the likes of Community Street[, it] is a very difficult movement to perform and do it safely. Meaning look out for pedestrians, other cars, and properties.

R.R. at 76a.

Relative to the Zoning Ordinance's specific unnecessary hardship criteria, Peters testified that Pennex's hardship is not financial or self-created. *See* Certified Record Item 25, Notes of Testimony, November 15, 2016 (N.T.) at 20. He further represented:

> [S]ome of the [Property's] unique features are the fact that it's one of the only immediate VC[-]zoned lots directly located across from an unextended street, as Carroll Street is. As well as it's one of the only lots in the immediate VC[-]zoned neighbor[hood] that adjoins an industrial development lot that is under the same ownership as the [Property].

R.R. at 72a-73a. He pronounced that aligning the Property's access drive with Carroll Street with four-way stop signs would offer a more practical and technically feasible

9

design than the Zoning Ordinance permits, since it would pull some truck traffic from residential streets, and allow them to "safely travel right through the intersection into the facility." R.R. at 75a; *see also* R.R. at 80a. Peters agreed, in his expert opinion, that it is in the public's interest for the access drive to be aligned with Carroll Street, and that the variances are the minimum necessary to carry out the alignment. *See* R.R. at 78a. Peters also expressed that the variances will not alter the neighborhood's essential character, or permanently or substantially impair the appropriate use or development of adjacent properties.

Pennex's representative Harry Dillman (Dillman) explained that Pennex intends to have employees continue to use the existing access drive to enter and exit the Headquarters, while the tractor-trailers would enter and exit the Property by the proposed access road. *See* R.R. at 82a-84a.

Ms. Lake testified that Pennex's purported hardship was self-created, in that Pennex purchased a residential property knowing that its intended use would not be permitted without the variances.[9] *See* R.R. at 87a-89a. She asserted that the Property is the only industrial use property in the Township. *See* R.R. at 89a-90a. Ms. Lake contends she purchased her property in a residential district without the expectation that an industrial use would be permitted to expand into the residential neighborhood which infringes on her right to enjoy her property (*i.e.*, what is now a residence, will be converted to a tractor-trailer parking lot). *See* R.R. at 98a-99a.

Ms. Lake declared that Pennex's operational efficiencies, convenience and continued success are not valid reasons to grant the variances. She further recounted that Pennex's representation here that safety necessitates the variances is contrary to its claim for the past 20 years that tractor-trailers turning left from Carroll Street onto Community Street created no additional safety issues. Ms. Lake asserted

_____

[9] After Pennex purchased the Property, the Township re-zoned the area, thereby placing the Property in a VC zoning district. *See* R.R. at 89a.

that requiring a four-way stop at the intersection would require tractor-trailers to use their very noisy jake brakes in front of her home at all hours, and would not alleviate the current situation where trucks are permitted to idle and park on Community Street, thereby blocking traffic, including school busses. *See* R.R. at 92a-95a.

William Lake (Mr. Lake) testified he and Ms. Lake purchased their property with the understanding that Pennex's Headquarters was located in the Borough and, thus, could not encroach on their residential Township property. *See* R.R. at 100a. He contended that the zoning change was essentially authorized to expand Pennex, which has far outgrown itself. Further, he declared that Pennex has basically installed a loading zone and parking lot in the Lakes' front yard. Mr. Lake claimed that the Borough installed large boulders to prohibit Pennex trucks from driving in yards and over cars and tearing down bushes and telephone poles. He recounted an incident in which a Pennex truck struck a telephone pole and blew a transformer, which brought wires down and caused damage that nearly injured their children. Mr. Lake maintained that granting the variances will further exacerbate rather than alleviate safety issues.

Based upon the evidence, the ZHB made the following relevant findings:

A. <u>FINDINGS OF FACT</u>.

. . . .

31. The [ZHB] finds that [Peters'] testimony that the alignment of the access drive with Carroll Street provides for a safer transition for tractor[-]trailers entering and exiting the Combined Property and more acceptable turning movements is credible.

32. [Peters] testified that there will be a stop bar for trucks exiting the Property, and a four (4) way controlled stop is being proposed and will be reviewed with the land development plan.

11

33. [Dillman] . . . testified that all trucks will enter and exit the new access drive once it is constructed.

34. The neighborhood in the Township in the vicinity of the Property is residential, although zoned [VC].

35. The neighborhood in the Borough in the vicinity of the Property is commercial/industrial.

. . . .

37. Opposition to the Application was related to the prior re-zoning of the Property, the proposed use of the Property, the addition of an additional access drive, and existing safety concerns.

38. The [ZHB] finds the majority of testimony to be irrelevant to the Application.

. . . .

B. CONCLUSIONS OF LAW.

. . . .

4. [Pennex] presented evidence sufficient to meet the criteria for dimensional variances from separation distance requirements contained in Section 410(c)3 and 410(c)4 [of the Zoning Ordinance] related to requirements that no part of an access drive shall be nearer than 50' to the intersection of two (2) street right-of-way lines, and access drives shall not cross a street right-of-way line within 3' of a property line, as those criteria set forth in Section 603 [of the Zoning Ordinance] as follows:

> A. [Pennex] suffers an unnecessary hardship from which it requires relief in that if the access drive were constructed in the location permitted by the [Zoning] Ordinance, it would result in a less safe traffic pattern;
>
> B. The unnecessary hardship is due to unique physical circumstances or conditions, including the location of Carroll Street in relation to the Property, which results in a preferred alignment of the access drive with Carroll Street as opposed to being offset with Carroll Street;

12

C. Because of physical circumstances or conditions, there is no possibility that the Property can be reasonably developed in conformity with the [Zoning] Ordinance. Given the location of Carroll Street, as it relates to the Property, construction of an access drive, in conformance with the [Zoning] Ordinance, would result in a less safe traffic pattern. Construction of the access drive in the proposed location is not only a preferred location from a traffic safety standpoint but should result in a decrease of existing traffic safety concerns and issues;

D. The unnecessary hardship has not been created by [Pennex] but by the location of the Property as it relates to Carroll Street;

E. The variances granted will not alter the essential character of the neighborhood or the zoning in which the Property is located, nor will substantially or permanently impair the use or development of adjacent property, nor be detrimental to the public welfare. To the contrary, granting the variances will result in a situation which will be better than the existing access to the [Headquarters] and is also better for neighboring property owners and the public welfare than strict compliance with the [Zoning] Ordinance; and

F. The variances, if authorized, will represent the minimum variances that will afford relief. The variances requested are the minimum necessary to align the access drive with Carroll Street.

ZHB Dec. at 3-8; R.R. at 5a-10a. The trial court agreed.

Importantly, the ZBA previously determined that **Pennex's proposed use of the Combined Property is permitted under the Zoning Ordinance**. **The second access drive for ingress and egress from the Property is also permitted by special exception under the Zoning Ordinance**. Thus, the sole issue is whether denying the variances required to align the Combined Property's second access drive to Carroll

13

Street would result in unnecessary hardship and would be contrary to the public interest. *Goldstein*, 19 A.3d at 569; *see also Hertzberg*.

The record evidence established that for years, since the access drive to the Headquarters has been in use, tractor-trailers have had to turn left from Carroll Street onto Community Street and then right into the access drive. Without the variances, Pennex would have to locate the access road 50 feet northeast of Carroll Street on Community Street and at least 3 feet from the Property line, thereby requiring its trucks to turn right from Carroll Street onto Community Street and then left into the access drive – identical to the current path, only in the opposite direction. The turns are necessitated by the unique circumstance that Carroll Street forms a "T" intersection with Community Street, which Peters stated was unique to this VC tract. *See* R.R. at 72a-73a, 77a. The precise location where the Township years earlier designed and constructed Carroll and Community Streets was clearly not within Pennex's control.

Notably, a significant portion of the Lakes' brief and reply brief to this Court argue against the Township's prior re-zoning that authorized Pennex to expand its Property use. The Lakes insist that there is no hardship because the expansion is primarily for Pennex's financial gain, and it is a safety hazard for their community due to the number of tractor-trailers now driving through their neighborhood. However, Pennex's expansion nor the Township's 2012 re-zoning are before this Court.

This appeal is solely from the ZHB's dimensional variance approval for the proposed access drive. The Lakes testified regarding damage sustained to neighboring properties, and to date at least one potential disaster caused by tractor-trailers negotiating such tight turns. Peters declared that eliminating the need for those turns (in either direction) would make tractor-trailer traffic safer for the surrounding neighborhood. If Pennex placed the proposed access drive over 50 feet from the existing intersection, and three feet away from the Fire Company Property line, it would not align with the existing intersection, and would, thus, be unsafe for its

14

employees and the traveling public. Because of the physical circumstances or conditions, there is no possibility that the Property can be more reasonably developed in conformity with the Zoning Ordinance, and with the public's safety in mind. Accordingly, the ZHB concluded that the Property's unique physical characteristics would work an unnecessary hardship on Pennex if the variance is denied, and that the proposed variance is not contrary to the public interest. *Goldstein*, 19 A.3d at 569; *see also Hertzberg*. We discern no error in this conclusion, as "the characteristics of the neighborhood" is a factor that may be considered in determining unnecessary hardship. *Tidd,* 118 A.3d at 8 (quoting *Hertzberg,* 721 A.2d at 50).

"A ZHB's interpretation of its own zoning ordinance is entitled to great deference and weight." *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009). Further, "ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of his land." *Tink-Wig Mountain Lake Forest Prop. Owners Ass'n v. Lackawaxen Twp. Zoning Hearing Bd.*, 986 A.2d 935, 941 (Pa. Cmwlth. 2009). Moreover,

> [t]his Court may not substitute its interpretation of the evidence for that of the ZHB. It is the ZHB's function to weigh the evidence before it. The ZHB is the sole judge of the credibility of witnesses and the weight afforded their testimony. We must view the evidence in a light most favorable to the prevailing party, who must be given the benefit of all reasonable inferences arising from the evidence.

*Tidd*, 118 A.3d at 13 (citations omitted). Reviewing the evidence in this case in Pennex's favor, as we must, we hold that there was substantial evidence to support the ZHB's findings and conclusions that the variances should be granted.

Based upon the foregoing, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

15

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| William and Billie Jo Lake,<br>      Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| Warrington Township Zoning<br>Hearing Board | : | |
| | : | |
| v. | : | |
| | : | |
| Warrington Township and<br>Pennex Aluminum Company LLC | : | No. 896 C.D. 2017 |

## O R D E R

AND NOW, this 11th day of January, 2018, the York County Common Pleas Court's June 8, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge