IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Kosek and Chris Walsh      :
                           :   No.  846 C.D. 2017
              v.            :
                           :   Argued:  April 10, 2018
Dallas Borough Zoning Hearing   :
Board and Dallas Borough      :
                           :
Appeal of:  Dallas Borough      :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                     FILED:  June 11, 2018

Dallas Borough appeals from the June 5, 2017 order of the Luzerne County Court of Common Pleas (trial court), which reversed the decision of the Dallas Borough Zoning Hearing Board (Board) and sustained the appeal of Mary Kosek and Chris Walsh (Applicants).

**Facts and Procedural History**

Applicants are the owners of certain real property located at 13 Village Circle Drive, Dallas Borough (Borough), Luzerne County, Pennsylvania (Property). The Property is located in a R-1 single and two-family residential district.

On March 8, 2016, Applicants filed an application to construct a two-story garage on the Property.  This application was denied on March 18, 2016.  On April 6,

2016, Applicants filed a second application for a variance/special exception, which was amended on April 20, 2016, and an appeal of municipal action. The amended application sought relief from Article 5, section 501.5(c) (minimum front yard setback of 30 feet) and Article 8, section 805.4 (variance for two-story garage additions) of the Dallas Borough Ordinance. (Borough's brief, at Exhibit A.) Specifically, the amended application requested (1) a special exception for a 1,680-square-foot two-car garage addition, exceeding the 35% floor area of a nonconforming building; (2) a special exception for a 20-foot by 25-foot second floor addition above the existing nonconforming first floor addition; (3) an 8-foot variance for the garage addition to conform to the front yard setback; and (4) a 100% variance and special exception for the proposed nonconforming second-story addition above the preexisting nonconforming first floor addition to match the first floor nonconforming layout. (Reproduced Record (R.R.) at 2a.)

The Board conducted a hearing on June 2, 2016, to consider the amended application. Applicants presented the testimony of Mary Kosek and contractor Jeff Morris. Applicants' counsel, Joseph J. Mashinski, Esquire, described the Property as located on a "cul-de-sac off of [sic] another cul-de-sac"; explained that the Property is sloped; and represented that a variance was not being requested for the entire Property. (R.R. at 36a-37a; Notes of Transcript (N.T.), 6/2/16, at 18-19.) He also stated that, with respect to the portion of the Property for which a variance was being requested, there was "already a nonconforming use" because an addition was built on the Property prior to the adoption of the applicable zoning ordinance. (R.R. at 37a-38a; N.T., 6/2/16, at 19-20.) Mr. Morris testified that the existing addition measured approximately 2,200 to 2,300 square feet and that the dimensions of the proposed two-story garage would be 30 feet by 20 feet. (R.R. at 45a-46a; N.T., 6/2/16, at 26-27.) Ms. Kosek, one of the

Applicants, testified, "We discussed earlier that if we needed to scale it back a little bit to have this go further we would be willing to look at that." (R.R. at 47a; N.T., 6/2/16, at 29.) Attorney Mashinksi affirmed her representation, explaining, "[W]e are applying as is and . . . we would like to seek approval as [is], but . . . if the condition is to scale back a little bit . . . [Applicants] are certainly open to doing that, but, I mean, this project is to improve the character of the home." (R.R. at 48a; N.T., 6/2/16, at 30.)

Tracey Carr, the Borough's Zoning Officer, testified on behalf of the Borough. Ms. Carr represented that the setback requirement at the time the house was constructed would have been the same as it is today, *i.e.*, 30 feet. (R.R. at 49a; N.T., 6/2/16, at 31.) Ms. Carr had "no explanation as to why the house was built within the front yard setback." (*Id.*) Ms. Carr also acknowledged that the house was not the only one in the neighborhood that was built in that manner. (R.R. at 50a; N.T., 6/2/16, at 32.) Mark Vanetten, the adjoining property owner, also offered a public comment, expressing his opinion of Applicants' request. (R.R. at 64a-68a; N.T., 6/2/16, at 46-50.)

At the hearing, the Board asked Applicants whether the relief requested was the minimum to afford them the necessary relief from the Ordinance. Although Applicants admitted that the variance could be reduced and a smaller garage could be built, Applicants did not reduce the size of their request, and maintained their request for relief as submitted. Ultimately, the Board denied Applicants' request for the variance, and issued its findings of fact and conclusions of law on June 13, 2016, concluding that Applicants did not satisfy their burden of demonstrating that the requested variance represented the minimum variance that would afford them relief and the least modification possible of the at-issue Ordinance. (Board's op. at Conclusion of Law No. 7; R.R. at 86a.)

3

On June 29, 2016, Applicants appealed the Board's decision to the trial court. The Borough filed a notice of intervention on July 5, 2016. The trial court heard oral argument on May 15, 2017, at which time no additional evidence was presented by either party. After a visit to the property on May 19, 2017, the trial court issued its June 5, 2017 opinion and order reversing the decision of the Board and sustaining Applicants' zoning appeal. (R.R. at 135a-38a.) The Borough filed a notice of appeal with this Court on June 22, 2017. (R.R. at 193a.)

**Discussion**

Generally, when the trial court does not take additional evidence in a zoning appeal, "the scope of review of this [C]ourt is to determine whether the governing body of the municipality abused its discretion or committed an error of law." *Claremont Properties, Inc. v. Board of Township Supervisors of Middlesex Township*, 546 A.2d 712, 714 (Pa. Cmwlth. 1988). However, when the trial court takes additional evidence in such an appeal, the trial court decides the case *de novo*, and the scope of review of this Court "is to decide whether the [trial court], rather than the governing body, committed abuse of discretion or error law." *Id.*

In this case, the trial court explained that, "In light of the sparse record before it, [the trial] [c]ourt conducted a view [of the Property] on May 19, 2017[,] at which all parties were represented." (Trial court's op. at ¶2; R.R. at 144a.) Because the trial court considered evidence that was not considered by the Board, we must determine whether the trial court—rather than the Board—committed an error of law and/or abused its discretion. "[I]f the lower court considers any testimony that was not before the Board, the lower court must decide the case on the merits, normally making findings of fact and conclusions of law, so that . . . we can determine the basis for the

4

lower court's decision and whether there is testimony to support it." *Borough of Baden v. Boron Oil Co.*, 297 A.2d 833, 834 (Pa. Cmwlth. 1972).

On appeal, the Borough argues that the trial court erred and/or abused its discretion by (1) reversing the decision of the Board; (2) failing to identify or consider the elements that Applicants needed to prove to justify granting the variance; (3) sustaining the zoning appeal when the June 5, 2017 order did not make a finding that the requested variance was the minimum that would afford Applicants relief; (4) concluding that the character of the community would not be altered if the variance was granted; and (5) making findings of fact and conclusions of law with no basis in the record.[1]

---

[1] Although the amended application appeared to request a variance and special exception, the parties did not pursue a special exception. This decision was discussed at the May 15, 2017 hearing before the trial court:

> [TRIAL] COURT: As we're aware, a variance is different from a special exception. A special exception is a permitted use under the Code where certain criteria is testified to and accepted by the Board. A variance, however, is a departure from the [Municipalities Planning] Code and requires the Board to review as to whether or not the variance which in many substances [sic] can be used or setback requirements poses harm to the municipality. What did we grant? What did we deny? Because we have all three before us. Mr. Bufalino?
>
> [BOARD'S COUNSEL]: Yes. If you don't mind, just to summarize, the application was denied on the date in question and then the appeal followed. So, there was not a partial granting and a partial denial.
>
> [TRIAL] COURT: When they denied, did you separately address the various requests made by [Applicants]?
>
> [APPLICANTS' COUNSEL]: Judge, as I understand it, the only issue is the variance request that is before us, the setback variance request.
>
> [TRIAL] COURT: That's why I'm asking. I'm trying to narrow this.

In *Hertzberg v. Zoning Board of Adjustment of Pittsburgh*, 721 A.2d 43 (Pa. 1998), our Supreme Court addressed the standard for analyzing requests for a dimensional variance. "When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations." *Id.* at 47. "Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation." *Id.*

First, the Borough asserts that the trial court committed error and/or abused its discretion when it reversed the Board's decision without identifying any specific error of law made by the Board. The Borough notes that, while the trial court's Rule 1925(a) opinion determined that the Board abused its discretion by failing to adequately consider the unique facts of the record and the existing character of the community, the trial court did not include any facts or evidence to support such an allegation. We disagree.

The trial court's opinion, which was attached to its June 5, 2017 order, included findings of fact and conclusions of law. The opinion notes that the Board orally denied the variance on the record upon the conclusion of the zoning hearing. The trial court reviewed the transcript of that hearing and determined that the transcript suggested that "the Board came to the hearing with a predetermined mindset to negotiate a smaller footprint prior to the taking of any testimony." (Trial court op. at

---

[APPLICANTS' COUNSEL]: There was not an opposition to the actual use. It was a permitted use, and that solved it. From our perspective—to me, this is the classic case where a variance should be granted.

(R.R. at 130a; N.T., 5/15/17, at 3-4.)

6

2; R.R. at 144a.) Further, the trial court's opinion expressly stated that the Board's "formal decision failed to discuss, elaborate or explain in detail the decision reached, nor did it address the specific facts and considerations as to the property." *Id.* Based upon these statements, we must conclude that the trial court did, in fact, identify specific errors made by the Board in reaching its decision and, also, that the trial court provided a discernable rationale, albeit succinctly.

The Borough's second argument is in the same vein, as it contends that that the trial court committed error and/or abused its discretion by failing to identify and consider the elements that Applicants needed to prove to justify approval of the variance.

Under section 910.2 of the Pennsylvania Municipalities Planning Code (MPC),[2] "the board may grant a variance, provided that *all* of the following findings are made where relevant in a given case":

> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
>
> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101–11202.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Section 910.2(a)(1)-(5) of the MPC, added by the Act of December 21, 1998, P.L. 1329, 53 P.S. §10910.2(a)(1)-(5) (emphasis added).

The first factor considers whether the Property includes "unique physical circumstances or conditions" and that any hardship to the Applicants was caused by those circumstances and not their own actions. 53 P.S. §10910.2(a)(i). In its opinion, the trial court expressly stated that the Property "is of irregular shape, being one of four properties fronting on a cul-de-sac. As the [P]roperty approaches the cul-de-sac, it gets narrower, closer to the street, and violative of the new existing frontage setback requirements. To the rear of the property, the land slopes downward . . . ." (Trial court op. at 2; R.R. at 144a.) This statement was based upon the trial court's May 19 view of the property. Thus, we find that the trial court appropriately considered this factor in reaching its decision, and that evidence of record supports the finding.

The second factor considers whether, due to the unique physical circumstances of the Property, it would be impossible to develop it in strict conformity with the applicable Ordinance, making a variance necessary to enable reasonable use of the Property. 53 P.S. §10910.2(a)(ii). To this end, the trial court explained that the downward slope of the land in the rear of the Property "makes moving the proposed

8

garage back from its requested space impracticable if not unduly burdensome," and acknowledged that "[a]n existing pool also inhibits moving the proposed garage back from the proposed location." (Trial court op. at 2; R.R. at 144a.) Again, the trial court's findings were based upon its view of the Property after oral argument. As such, we conclude that the trial court adequately addressed the second factor enumerated in section 910.2(a) of the MPC.

The third factor asks whether the Applicants created the undue hardship. 53 P.S. §10910.2(a)(iii). When considering undue hardship in relation to a dimensional variance request, "courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Hertzberg*, 721 A.2d at 50. In *Hertzberg*, the Supreme Court explained that, "[t]o hold otherwise would prohibit the rehabilitation of neighborhoods by precluding an applicant who wishes to renovate a building in a blighted area from obtaining the necessary variances." *Id.*

With respect to this consideration, the trial court expressly found that the Applicants "purchased the [P]roperty in its present non-conforming status in 2013." (Trial court op. at 2; R.R. at 144a.) The trial court also found that the structure located on the Property "was already a pre-existing non-conforming use, having been built in the 1980's [sic] prior to the adoption of the Zoning Ordinance." (*Id.*) While the Applicants cannot seek a variance on the basis of a hardship that existed at the time of their purchase, the facts of this case are distinguishable, as the Property was already nonconforming at the time it was purchased. *See Appeal of McClure*, 203 A.2d 534 (Pa. 1964). Additionally, the trial court explained that the downward slope of the rear portion of the Property would make altering the plans for the proposed garage unduly

burdensome. Based upon these findings, we must conclude that the trial court adequately considered the third factor of section 910.2(a) in reaching its decision, as it is clear that any undue hardship was not caused by the Applicants.

The fourth factor considers whether the variance, if authorized, would "alter the essential character of the neighborhood" or "substantially or permanently impair the appropriate use or development of adjacent property, [or would] be detrimental to the public welfare."[3] 53 P.S. §10910.2(a)(iv). Once again, the trial court adequately addressed this factor, expressly stating that "[t]he proposed structure [would] not impair the appropriate use or development of the adjacent properties," and that it would not "be detrimental to the public welfare as the [Applicants] constitute the vehicle traffic utilizing what is basically a dead end street." (Trial court op. at 2; R.R. at 144a.) Finally, the trial court found that the proposed garage "would not change the character of the neighborhood, but would be consistent with neighboring properties." (Trial court op. at 2-3; R.R. at 144a-45a.) As was the case with the first three factors, the trial court based this finding upon its viewing of the Property.

The Borough argues that the testimony of Mark Vanetten, who owns the land adjacent to the Property, directly contradicts the trial court's determination. Specifically, the Borough asserts that, in his testimony before the Board, Mr. Vanetten expressed a concern as to whether the size of the proposed garage would fit into the neighborhood, and whether the proposal would impact his own property. (R.R. at 64a-65a; N.T., 6/2/16, at 46-47.)

However, it is important to consider Mr. Vanetten's testimony in its entirety, along with the testimony of Mr. Morris, Applicants' contractor:

---

[3] The Borough raises a separate issue on appeal regarding whether the trial court erred in concluding that the character of the community would not be altered if the variance was granted. We will address this argument as it relates to the requirements of section 910.2(a).

10

Mr. Vanetten:   Just the overall size compared to the neighborhood.  It's a neighborhood of 2,200 to 3,000 square foot homes, three bedrooms, all pretty similar to [sic] lot sizes.  And this seems to be a big footprint on this lot which is going to create kind of a crowding effect of the immediate surroundings.  I believe that the single-story building used to be a garage at one point and it was converted into the family room when the place was built.  But, you know, it really impacts more than their property, my property.

Mr. Morris:  I don't mean to interrupt either but that's not true because there is a four-foot crawl space underneath that so that was not a garage at any time.  The foundation's up out of the ground at least 18 inches to two feet.  And I mean, there's no way that they went in and excavated all that, had that as a garage at any point.

Mr. Vanetten:  I certainly appreciate your commentary.  And that was the thought that crossed my mind, you know, when I was speaking with [the Applicants], that, you know, no one wants to be the most expensive house on the block or the biggest.  And if you look directly across the street from them, square footage they're going to be larger but it's a sprawling house and it has a carport and then a garage.  So optically, you know, it certainly appeared a lot bigger.  So I don't think that this is going to have that impact.

Mr. Morris:  Their property sits pretty far back off the street.  It's not eight foot [sic] from the street, that's the difference.  They're not really comparable properties.

Mr. Vanetten:  I meant—directly across the street there's only a few on that cul-de-sac. I mean, that's why I'm using that as an example, you know, because it's not going to be this monstrosity with these tiny homes around it. As I indicated, you know, their property—and eight feet is only that one corner the way the house is built.  It's not the entire house right up against the setback.  This is the front of their

11

house right here, their property. And this, you know, this is the other cul-de-sac. So you know, with all due respect, I don't think it's going to be a concern. I think it's going to increase the property values and be much more aesthetically pleasing to the neighborhood.

(R.R. at 65a-68a; N.T., 6/2/16, at 47-50.) After reviewing Mr. Vanetten's testimony, we do not agree that such testimony directly contradicts the trial court's finding that the requested variance would not alter the character of the neighborhood. Rather, while Mr. Vanetten initially expressed his concern about the impact of the proposed garage on the other neighborhood properties, the further explanation of the plans by Mr. Morris seemed to convince Mr. Vanetten that the garage would actually enhance the Property and surrounding property values.

Finally, section 910.2(a) tasks the court with considering a fifth factor—whether "the variance, if authorized, [would] represent the minimum variance that [would] afford relief and [would] represent the least modification possible of the regulation in issue." 53 P.S. §10910.2(a)(v).[4] With respect to this factor, the trial court found that the proposed location was limited due to the design and placement of the current structure, and that moving the proposed structure back from its proposed position would be "impracticable, if not unduly burdensome." (Trial court op. at 2-3; R.R. at 144a-45a.) However, the trial court did not consider whether a smaller structure would satisfy the needs of the Applicants.

The record establishes that the issue regarding whether the requested variance was the minimum variance that would afford Applicants relief was a core issue considered by the Board. At the zoning board hearing, Applicants admitted

---

[4] The Borough raises a separate issue on appeal regarding whether the trial court erred in failing to make a finding that the requested variance was the minimum that would afford Applicants relief. We will address this argument as it relates to the requirements of section 910.2(a).

12

through their testimony that a smaller garage could be built and that they would consider such a reduction in size:

> Ms. Kosek: We discussed earlier if we needed to scale it back a little bit to have this go further we would be willing to look at that. But that's kind of what we came up with, with our contractor, with the plans and what we didn't realize when we bought the house what our land exactly was, until we talked to our neighbor across the street.
>
> ***
>
> Attorney Mashinski: You know, as [Ms. Kosek] indicated, you know, we are applying as is and, you know, we would like to seek approval as is, but you know, if the condition is to scale back a little bit, you know, the Appellant is certainly open to doing that but, I mean, this project is to improve the character of the home.

(R.R. at 46a-47a; N.T., 6/2/16, at 29-30.)

Based upon the fact that the trial court did not include a finding in its opinion regarding the minimum variance requirement, and in light of Applicants' testimony at the hearing before the Board, we must conclude that the trial court erred in failing to address this issue.

We also note that the trial court did not consider whether the Applicants' request constitutes a de minimis variance. "[E]ven where the requirements for a variance have not been met, the Board may grant a de minimis variance 'where only a minor deviation from the zoning ordinance is sought and rigid compliance is not absolutely necessary to protect the public policy concerns inherent in the ordinance.'" *Township of Middleton v. Zoning Hearing Board of Middletown Township*, 682 A.2d 900, 901 (Pa. Cmwlth. 1996) (quoting *Constantino v. Zoning Hearing Board of the*

13

*Borough of Forest Hills*, 618 A.2d 1193, 1196 (Pa. Cmwlth. 1992)). In this case, the Borough's letter denying Applicants' request acknowledges that the proposed "[g]arage addition extends beyond the existing non-conforming setback line by 1.5 [feet]," thereby creating "[a]n additional front yard setback nonconformity." (R.R. at 7a.) Because the proposed addition creates only an additional 1.5 feet of encroachment, the trial court erred in failing to consider whether the Applicants' request is a de minimis variance.[5]

In the same vein, we also question whether Article 8, section 805.4 (variance for two-story garage additions) of the Dallas Borough Ordinance requires a variance for a 1.5-foot extension of an existing nonconformity. The language of section 805.4 provides that "[a]ll extensions, expansions and enlargements of nonconforming uses and structures *shall require approval as a special exception.*" Ordinance, Section 805.4 (emphasis added). As Applicants' request proposes a 1.5-foot extension of a nonconforming use, the trial court erred in failing to consider whether the request

---

[5] The concurring opinion provides that, since Applicants have a home on the Property, they have already made reasonable use of the same, and the inability to add a garage is not a hardship. However, the presence of a home on the Property does not preclude the Applicants from making reasonable use of the property (*i.e.*, seeking to add a garage) and requesting a variance to do so when unnecessary hardship and the other conditions for a dimensional variance have been met. The purpose of a variance is to be able to develop and make reasonable use of one's property. If grounds for a variance could not be raised because a home already existed on one's property, most variances could not be granted. Here, it is not the inability to build a garage that constitutes the hardship, but the conditions that exist on the Property that make adding the garage in conformance with the zoning requirement an unnecessary hardship. After a site visit, the trial court found that (1) the lot was of "irregular shape," fronting on a cul-de-sac, narrowing as it approaches such cul-de-sac, and sloping downward in the rear of the property; (2) such irregularities make compliance with the existing front-yard setback requirements "impracticable if not unduly burdensome"; (3) the unnecessary hardship was not created by Applicants, as it existed prior to their purchase of the property; and (4) the request "will not impair the appropriate use or development of adjacent properties," as the "other three structures on the cul-de-sac have large attached garages" and the proposed garage would be "consistent with neighboring properties." (R.R. at 144a-45a.) Thus, the only factor to be considered is whether the variance requested is de minimis.

14

required a special exception under Article 8, section 805.4 of the Dallas Borough Zoning Ordinance.

Finally, the Borough asserts that the trial court erred in making findings of fact and conclusions of law without a proper basis on the record. While the trial court does not cite specific testimony or other evidence, it does indicate that its findings are based upon its viewing of the Property, which occurred after oral argument before the trial court. The trial court explained that the view was necessary because the record before the Board was "sparse." Thus, we find that the trial court based its findings of fact and conclusions of law upon its viewing of the Property, and properly indicated that in its order and opinion.

**Conclusion**

The trial court appropriately found that (1) the Property contained unique physical circumstances causing undue hardship to the Applicants; (2) that those unique circumstances made it impossible to develop the Property in strict conformity with the Ordinances; (3) such undue hardship was not created by the Applicants; and (4) the variance, if granted, would not alter the essential character of the neighborhood. However, the trial court failed to address all necessary substantive requirements of section 910.2(a) because it did not make a finding as to whether the requested variance represented the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue. The trial court also failed to consider whether Applicants' request constituted a de minimis variance and/or a special exception pursuant to the relevant sections of the Dallas Borough Zoning Ordinance.

Accordingly, we vacate the trial court's June 5, 2017 order, and remand the matter to the trial court to issue a new order and opinion, which includes a finding regarding the minimum variance requirement of section 910.2(a)(5) of the MPC;

15

whether Applicants' request is a de minimis variance; and whether a special exception should be granted.

_____

PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Kosek and Chris Walsh     :
                                :   No. 846 C.D. 2017
            v.                :
                                :
Dallas Borough Zoning Hearing    :
Board and Dallas Borough       :
                                :
Appeal of: Dallas Borough       :

## ***ORDER***

AND NOW, this 11th day of June, 2018, the June 5, 2017 order of the Court of Common Pleas of Luzerne County (trial court) is vacated. The matter is remanded to the trial court to issue a new order and opinion, consistent with this opinion, which includes a finding regarding the minimum variance requirement of section 910.2(a)(5) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10910.2(a)(5).

Jurisdiction is relinquished.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Kosek and Chris Walsh     :
     :
          v.         :   No. 846 C.D. 2017
     :   ARGUED:  April 10, 2017
Dallas Borough Zoning Hearing     :
Board and Dallas Borough     :
     :
Appeal of:  Dallas Borough     :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**CONCURRING AND DISSENTING OPINION**
**BY SENIOR JUDGE LEADBETTER**         **FILED:  June 11, 2018**

I concur in the result reached by the majority, at least in part. I write separately to express my view that, since the property owners already have a home on the property, they have no hardship entitling them to a variance, dimensional or otherwise, in order to build a garage. While the quantum of proof required to establish unnecessary hardship for a dimensional variance is lesser than when seeking a use variance, an applicant nonetheless must present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship. *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43 (Pa. 1998). Although the Court in *Hertzberg* eased the requirements, it did not remove them. *Doris Terry Revocable Trust v. Zoning Bd. of Adjustment of City of Pittsburgh*, 873 A.2d 57 (Pa. Cmwlth. 2005).  Therefore, the minimum variance requirement of Section 910.2(a)(5) of the MPC is irrelevant.  However, they may be entitled to a

variance which is de minimis, or to a special exception, so I agree that the case should be remanded so that the trial court can address those issues. *See Hawk v. City of Pittsburgh Zoning Bd. of Adjustment*, 38 A.3d 1061, 1066 (Pa. Cmwlth. 2012) (holding that there is no set criteria for determining what will be considered de minimis; the grant of such a variance depends upon the circumstances of each case).

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge