# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hopewell Township, : 
                  Appellant : 
                   : 
            v. :  No. 51 C.D. 2023
                   :  Argued: December 4, 2023
Hopewell Township Zoning Hearing : 
Board : 
                   : 
            v. : 
                   : 
James T. Hopkins, Jr. and : 
Elsie P. Hopkins : 

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                 **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                 **HONORABLE ELLEN CEISLER,** Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: January 3, 2024**

In this land use appeal, Hopewell Township (Township) appeals an Order of the Court of Common Pleas of York County (trial court) affirming the March 10, 2022 decision of the Hopewell Township Zoning Hearing Board (the Board) granting James T. Hopkins, Jr.'s and Elsie P. Hopkins's (collectively, Applicants) Variance Application (Application) thereby allowing Applicants to subdivide their 10.6-acre parcel (the Property) located in the Agricultural Zoning District (the Agricultural Zone) of the Township into two approximately five-acre parcels for the purpose of constructing a second single-family dwelling without the requirement to forfeit one dwelling right per acre to do so. The Township's Zoning Ordinance

(Ordinance) requires a minimum lot size of one acre and a maximum lot size of two acres for a single-family dwelling in the Agricultural Zone and provides that with regard to lots exceeding two acres, an additional dwelling right must be forfeited for each additional or partial acre exceeding one acre; however, pursuant to an existing agreement, Applicants possess only two dwelling rights for the Property, one of which applies to their own single-family residence.[1] The issues presented herein require a determination as to whether the Board erred in finding that Applicants met their burden of proof of all elements necessary for granting the Application. After thorough consideration, we affirm.

The following facts are from the Board's decision. Since 1983, Applicants have been the owners of the Property which at that time was approximately 16 acres. Mr. Hopkins farmed a portion of the Property for two years before finding that the land's rocky soil was not suitable for continued farming. A separate portion of the Property, 5.3 acres, was subdivided in October 1990, and, thereafter, a single dwelling right remained associated with the Property. Currently, the Property is comprised of about 10.6 acres, and eight neighboring properties are comprised of about five acres.

A public hearing was held on the Application on February 17, 2022, at which time Mr. Hopkins testified. Mr. Hopkins is 87 years old, and Mrs. Hopkins is 88 years old. Maintaining the dormant Property has become difficult for Mr. Hopkins. The variance would allow the Property to be utilized for the construction of a single-family dwelling. Applicants intend to permit their niece and nephew, who would

---

[1] *See* Reproduced Record (R.R.) at 224a-26a; 229a-31a; 235a-37a; 242a-44a; 257a-59a.) Pursuant to the agreement which was entered in connection with a previous subdivision plan, the Property received two additional rights for single-family residential units and one additional unit for a single-family residence was allocated to another property owner. (*Id.*)

2

assist Applicants in maintaining the Property, to construct a home on the subdivided parcel. Mr. Hopkins believed the variance is the minimal amount necessary to afford Applicants relief and would not substantially alter the neighborhood's character or impair the usability of development of neighboring properties. Applicants submitted an exhibit and supporting testimony of neighbors in this regard. Mr. Hopkins described a significant wooded portion of the Property and an overhead utility easement which bisects the Property as unique physical circumstances or conditions that are peculiar to the Property and were not of Applicants' creation. Mr. Hopkins explained that these conditions, coupled with the poor soil on the Property, make it impossible to use the Property for an agricultural purpose. It also would be extremely difficult to construct a home along with the necessary in-ground septic and well systems on a parcel less than two acres. Due to these physical conditions on the Property, Mr. Hopkins stated it cannot be utilized in a way that conforms with the Ordinance.

Township's Zoning Officer Keith Hunnings (Zoning Officer) testified as to Township's position that the Property could be utilized in a way that conforms to the Ordinance which currently requires a minimal lot size of one acre and a maximum lot size of two acres for a single-family dwelling in the Agricultural Zone. Zoning Officer suggested Applicants could subdivide a 2.25-acre lot from the Property and forfeit a dwelling right to enable the construction of the proposed single-family dwelling, notwithstanding the utility line easement and the other characteristics of the Property. Zoning Officer anticipated no problems with creating a driveway, well, or septic system on a 2.25-acre lot. Moreover, Zoning Officer posited that Applicants could purchase additional dwelling rights from neighbors to remain in compliance with the Ordinance.

3

Several of Applicants' neighbors signed a statement on December 1, 2021, and testified in favor of the Application and their belief that the proposed subdivision of five acres from the Property would not only be in conformity with the character of the neighborhood but would actually enhance it. Applicants' nephew Rick Sands testified regarding the hardship the utility line easement creates and that the variance would allow the construction of a single-family dwelling in a safer location and further away from the road than where it would need to be placed on a 2.25-acre plot.

The Board issued findings of fact (FOF) wherein it incorporated its summary of the testimony as set forth in the decision, accepted the parties' exhibits into evidence, and found Mr. Hopkins' testimony and that presented by Township to be credible. (Board's Decision, FOF ¶¶ 1-3.) The Board reached a single conclusion of law (COL), which reads as follows:

> The Board has considered the weight of the [t]estimony and believes that [] Applicant[s] ha[ve] demonstrated that there is a hardship that was not self-created in this Property and because this is a dimensional variance a looser standard is applied, and therefore, [] Applicant[s] ha[ve] met [their] burden of proof as to all Variance criteria.

(*Id*., COL ¶ 1.) The Board unanimously voted to grant Applicants' Application.

Township timely appealed the Board's decision to the trial court, which affirmed. In doing so, the trial court found that the variance is a dimensional variance "because a single-family residential dwelling is already a permitted use in an Agricultural Zone." (Trial Court Memorandum Opinion (Op.) filed 12/16/22, at 10.[2]) The trial court meticulously applied the five criteria the Pennsylvania Supreme

---

[2] In its Memorandum Opinion entered on March 13, 2023, pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), (Rule 1925a Op.) the trial court stated that it had previously **(Footnote continued on next page…)**

4

Court provided must be satisfied for a dimensional variance in *Hertzberg v. Zoning Board of Adjustment*, 721 A.2d 43 (Pa. 1998), and found that in light of the record evidence, the Board could have "inferred" that Applicants had met those criteria. (Op. at 10.) Township filed a timely notice of appeal.

On appeal,[3] while Township concedes Applicants have shown that their proposed subdivision of the Property will not substantially alter the surrounding neighborhood's character, it posits that the evidence is insufficient to meet the other four elements necessary to qualify for the variance. (Township's Brief (Br.) at 11). Township contends Applicants did not present substantial evidence of an existing, unnecessary hardship on the Property such that development in accordance with the Ordinance is not possible and suggests that Applicants could subdivide the Property within the parameters of the Ordinance. (*Id.* at 10-11.) Township posits that Applicants seek the Variance for the "practical" reason of easing their burden of caring for the Property based on nothing more than a "personal preference." (*Id.* at 9.) Also, Township avers Applicants have not supported their claim that the variance

---

addressed the issues Township presents on appeal in its Order and Opinion entered on December 16, 2022, and incorporated its prior decision therein. (Rule 1925a Op. at 1.)

[3] Although Township frames the issues for our consideration in terms of whether the trial court committed errors of law or abused its discretion, (Township's Brief at 3), because the trial court did not take additional evidence in this zoning appeal, this Court's review is limited to reviewing the Board's decision, not that of the trial court, and determining whether the Board committed an error of law or an abuse of discretion. *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 695 (Pa. Cmwlth. 2020). When determining whether the Board committed an error of law, we conduct a *de novo* review and "are not bound by the legal conclusions of the governing body or lower court[]." *EQT Prod. Co. v. Borough of Jefferson Hills*, 208 A.3d 1010, 1025 (Pa. 2019) (citation omitted). We will find the Board abused its discretion "whenever the findings of the governing body are not supported by substantial evidence." *Id.* at 1024. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Delchester Devs., L.P. v. Zoning Hearing Bd. of Twp. of London Grove*, 161 A.3d 1081, 1085 n.1 (Pa. Cmwlth. 2017) (quoting *Hertzberg*, 721 A.2d at 46).

was the minimum to afford them relief, and, in fact, Township established that lesser variance requests were possible, like the purchase of additional dwelling rights or subdivisions as small as two acres, but Applicants did not seek such relief. (*Id.* at 3, 21-23.) According to Township, it demonstrated to the Board that small subdivisions of the Property would sufficiently provide the relief Applicants seek, but for "preference, desire, convenience, and aesthetics" reasons, Applicants did not consider these other viable options which would conform to the Ordinance. (*Id.* at 9-11, 19, 22.) Acknowledging the wooded property was cut horizontally by the utility line easement, Township points out that such features are present on "many parcels." (*Id.* at 20.) Because Applicants had been the grantors in 1986 when the utility line easement was given, Township reasons they were well aware of this "self-created hardship" and received consideration for it. (*Id.* at 20-21). Township argues the Board ignored the foregoing evidence and based its decision "upon feeling rather than strong legal basis." (*Id.* at 11.)

The Board argues that the variance is clearly dimensional under *Hertzberg*, as a single-family detached dwelling is a permitted use in the Agricultural Zone of Township. Therefore, Applicants' proposed use of their Property is not entirely outside of uses contemplated for properties in the Agricultural Zone but, instead, "[t]he very essence of [their] request speaks to the dimensions of the lot on which a permitted use can occur." (Board's Br. at 6-8.) The Board posits substantial evidence of record supports its decision to grant the variance, as each of the five necessary criteria enumerated in *Hertzberg* has been satisfied. (*Id.* at 9.) The Board states Applicants demonstrated the "unique topographical characteristics and physical conditions of the Property" render the Property unsuitable for agricultural uses. (*Id.* at 9-12.) In this regard, the Board explains it also properly considered the

6

resultant economic detriment to Applicants if the variance were denied, the lot sizes of nearby parcels, and the neighbors' approval of the variance. (*Id*. at 8, 12.) According to the Board, the Property cannot reasonably be used in strict conformity with the Ordinance as the record lacks any evidence to support Township's suggestion that a 2.25-acre plot would be sufficient for the placement of a single-family dwelling on the Property or that Applicants' ability to purchase dwelling rights from other property owners in Township would be feasible. (*Id*. at 13-18.) The Board stresses that Applicants did not create the aforementioned hardships, *i.e*., "the rockiness of the Property's soil, the amount of land consisting of wooded area, or the presence of a forty-foot utility line easement bisecting the Property," and Township did not substantiate its claim that other properties in the Agricultural Zone are burdened by similar hardships. (*Id*. at 19-21.) The Board also notes that Applicants' request for the variance, which the Board properly found to be the minimal necessary to enable a reasonable use of the Property for a single-family dwelling, "received overwhelming support from neighboring property owners," who testified the variance "would promote consistency and uniformity of lot sizes in the [] neighborhood." (*Id*. at 21-23.) The Board concludes that the strict enforcement of the Ordinance in the instant situation would be contra to the express purpose of Township's Agricultural Zone to "preserve for agricultural use the land best suited for that purpose and thereby strengthen the agricultural economy of [] [T]ownship" because even if the variance is denied, the Property cannot be used for agricultural purposes. (*Id*. at 25-27 (emphasis omitted).)

Applicants maintain that, as the Board found, their requested relief is for a dimensional variance since the use of the Property for a single-family dwelling is permitted in the Agricultural Zone and point out that Township does not challenge

that determination herein. (Applicants' Br. at 10.) Citing to *Hertzberg*, Applicants argue they introduced ample evidence to support the Board's decision to grant the dimensional variance because numerous physical conditions exist on the Property creating an unnecessary hardship such that it cannot be utilized in keeping with the Ordinance. (*Id*. at 9, 11.) For example, the utility line cannot be avoided or tampered with and to do so could lead to "monumental expense." (*Id*. at 11-12.) Also, purchasing additional dwelling rights from a third party is a rare occurrence which would cause Applicants an undue burden, and denying the variance prevents them from using their "remaining dwelling right in a way which is otherwise permitted by right." (*Id*. at 12-13.) Applicants stress that Township does not dispute the proposed subdivision of the Property into two, approximate five-acre parcels would not be detrimental to Applicants' neighbors, who support the variance and live on similar sized lots, and would not thwart the purpose of preserving agricultural land because the soil is unsuitable for farming. (*Id*. at 6, 13.) Applicants assert they are not responsible for the hardships they seek to ameliorate, and Township's suggested solutions are untenable, for "it is not possible to place a home, septic system, well[,] and driveway on a lot of less than two acres as required by the [O]rdinance." (*Id*. at 14.) Furthermore, because the Ordinance as it reads presently was not in effect when Applicants purchased the Property, Applicants could not have known the utility line easement would pose a future problem. (*Id*. at 16.) Finally, Applicants posit the variance is the minimum necessary to afford relief. Township has recognized in a written agreement providing for available dwelling rights that the Property is of low quality for agricultural purposes and it is very difficult to purchase additional dwelling rights in Township. (*Id*. at 17.)

*A. Unique Physical Circumstances or Conditions Peculiar to the Property and Unnecessary Hardship Due to Those Conditions*

It is not disputed that farming is a permitted use in the Agricultural Zone; however, it is also undisputed that the Property has not been farmed for decades due to the vast wooded area and rocky soil on the Property. Mr. Hopkins testified that neither he nor a neighbor who had expressed interest in farming the Property were able to produce a profit doing so as a result of the rocky soil which prompted Applicants to sell about 5.3 acres of the Property in 1990. At that time, Township and Applicants entered into an agreement regarding dwelling rights pursuant to which Applicants retained one remaining dwelling right for the Property, although Applicant understood that he was allowed only one additional subdivision. (N.T. Township Zoning Hearing, 2/17/22, at 9-11, 12-13, 23-24, R.R. at 134a-36a, 137a-38a, 148a-49a.) Applicants now seek to subdivide and build a single-family residence on the Property, another permitted use. While Zoning Officer testified he believed it is possible to subdivide the Property within the parameters of the Ordinance to do so, he also admitted that would require a minimum lot size of 2.25 acres as per DEP regulations and Applicants would need to account for the extra 0.25 acres "with a well or a groundwater recharge easement[,] which would have to sit down slope below where their septic system is." (R.R. at 169a.) Zoning Officer further admitted that "with a fairly large house[,] their driveway[,] and all the stormwater requirements, they need a primary and a backup septic site, well, by the time you try to jam all that on two acres [] it gets tight[.]" (*Id.* at 172a.) Zoning Officer stated that soil testing had not been completed and that could also affect the outcome of developing the Property. (*Id.* at 173a.) Zoning Officer also admitted that he understood why Applicants requested the Variance and "unfortunately" he was not able to grant the Variance because "[his] hands are tied." (*Id.* at 171a.)

9

*1. Physical Conditions Prevent Development of the Property in Strict Conformity with the Zoning Ordinance and Variance will Effect a Reasonable Use of the Property*

The Board heard testimony to support a finding that because of unique physical conditions on the Property, including its lack of farmable acreage, the existing wooded area, and the utility line easement, the Property cannot reasonably be used in strict conformity with the Ordinance. As previously stated, Mr. Hopkins testified regarding the inability to farm the Property, the purpose for which the Agricultural Zone was created. (R.R. at 134a-36a.) He also discussed the fact that about one-third of the Property is wooded and the utility line easement requires a 40-foot right-of-way that affects where a home may be built as well as the placement of a septic system and utilities. (*Id*. at 146a-47a.) If the utility line is damaged during construction, Mr. Hopkins believed the cost would be $48,000 per second. (*Id*. at 151a.) Presently, the Property is open land blanketed with grass that needs to be mowed and allows for some walking in the wooded area, although he described such treks as "unpleasant." (*Id*. at 148a-49a.).

*2. Applicants Did Not Create the Necessary Hardship*

The Board heard testimony from which it could find the existence of a hardship attendant to the Property, which was not of Applicants' creation. *Yeager v. Zoning Hearing Bd. of Cty. of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001). Mr. Hopkins testified that he was not responsible for the layout of the Property. (*Id*. at 147a.) In addition, he explained the unsuccessful steps he and his neighbor had taken in the past to utilize the Property as farmland, and the manner in which the utility line easement bisects the Property. In this regard, the trial court observed,

"[e]ach one-acre portion of the property is bisected and wooded"; [i]t seems that limiting the proposed lot to just over two of the ten acres would require crafting a lot from only the non-wooded portions of multiple acres impacting the positioning of the home and leaving an oddly-shaped lot" as would Zoning Officer's suggestion that Applicants could subdivide two acres and lease the other three. (Op. at 22-23.) Certainly, Applicants had no control over the wooded growth on the property or on the placement of the utility line easement. Moreover, there is no evidence in the record to support Township's bald assertion that because they were the grantors when the utility line easement was given, they "presumably" "receive[] consideration for granting such a right." (Township's Br. at 21.) Thus, the Board heard substantial evidence from which it could find this prong has been satisfied.

### 3. The Variance is not Detrimental to the Public Welfare

There is no dispute that as Mr. Hopkins and his neighbors testified, dividing the Property into two approximately five-acre parcels, which the variance would enable, conforms to the neighboring parcels, which are all of similar acreage. (R.R. at 140a-41a.; Township's Br. at 12.) Indeed, the testimony revealed the variance would complement the lots and homes in the immediate neighborhood, which are situate on lots that are approximately five acres or even more. (R.R. at 140a-46a.) In addition, in their letter addressed to the Board titled "Neighborhood Endorsement of the New Home Plan" and dated December 1, 2021, neighbors of Applicants stated that they had "inspected the proposed lot," "the architectural floor plans and artist[']s rendering of the home as well as a picture of the proposed home." (R.R. at 270a.) In urging the Board to grant the variance, Applicants' neighbors indicated their belief that the dwelling and its proposed placement on the five-acre lot would

11

conform to the neighborhood and "be an enhancement for [them] all." (*Id.*) Thus, this prong of the *Hertzberg* test has been satisfied.

### 4. The Variance is the Minimum Necessary to Afford Relief and is the Least Modification of the Ordinance

Applicants sought a variance "to subdivide the existing parcel into one lot of 4.823 acres and one lot of 5.718 acres." (Application ¶ d.; R.R. at 34a.) Mr. Hopkins opined that the variance request was the minimum to provide him relief. (R.R. at 146a.) He felt that this was practical and was more in line with the character of the neighborhood than, for example, requesting the Property be divided into a one-acre lot and a nine acre-lot (*Id.* at 150a.) Mr. Sands' testimony also spoke to the safety aspects of building around the utility cable. After wheel-measuring the area and allowing 1/3 of the 2.25 acres for the front yard of a single-family dwelling and 2/3 of the 2.25 acres for the backyard, the home would be located just 73 feet from the road and close to the neighbor's home on the eastern side of the Property. (*Id.* at 176a-78a.) Mr. Sands indicated he would not build a single-family dwelling home without the variance, out of his concern that the placement of the home on the Property would not comport with the placement of other homes in the neighborhood and that a home built too close to the road would not be safe. (*Id.* at 178a.) As previously discussed, the Board also heard the testimony of and considered the letter signed by Applicants' neighbors that dividing the Property into two, roughly equal parcels of five acres each would complement their properties and even enhance the neighborhood.

B. *Analysis of the Hertzberg Factors*

After a thorough review of the original record, the parties' briefs and oral argument, and the pertinent law, we find the cogent and well-reasoned opinion of The Honorable N. Christopher Menges thoroughly and accurately reviewed the *Hertzberg* factors and evidence offered in support thereof at the hearing before the Board and concluded that there was sufficient evidence to support the Board's finding that Applicants have satisfied their burden of proof as to these factors and decision to grant the variance. Accordingly, we adopt Judge Menges' analysis and reasoning with regard to the *Hertzberg* factors as our own.

_____
**RENÉE COHN JUBELIRER,** President Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hopewell Township,
                  Appellant

          v.

Hopewell Township Zoning Hearing
Board

          v.

James T. Hopkins, Jr. and
Elsie P. Hopkins

:
:
:
:
:    No. 51 C.D. 2023
:
:
:
:
:
:
:
:
:
:

## O R D E R

**NOW**, January 3, 2024, the Order of the Court of Common Pleas of York County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge